# EXHIBIT 4

STATE OF NEW YORK
SUPREME COURT           ULSTER COUNTY
NICHOLAS WILEY,

Plaintiff,

   -against-          **Decision & Order**
                 **Index No.: 13-1727**

MARJAM SUPPLY CO., INC., MARJAM SUPPLY
OF BAYSHORE, INC., MARJAM SUPPLY OF REWE
STREET, LLC., PLAYHOUSE AND ELWYNN LIMITED
PARTNERSHIP, WOODSTOCK COMMONS HOUSING
DEVELOPMENT FUNDING COMPANY, INC., RURAL
ULSTER PRESERVATION COMPANY, INC., LIBOLT &
SONS, INC., d/b/a AFFORDABLE HOUSING CONCEPTS,
THE ROCKER II DRYWALL SERVICES, LLC.;
CHICKETA WATSON, JUMPSTART REALTY, LLC,
HTR CONSTRUCTION LTD., TRI-CON CONSTRUCTION,
LTD., MOMBASHA ELECTRIC CONTRACTING, INC., and
DYNAMIC PLUMBING, HEATING & AIR CONDITIONING
COMPANY, INC.,

Defendants.

---

Supreme Court, Ulster County
Motion Return Date: November 21, 2016
RJI No. 55-13-2129

Present: Christopher E. Cahill, JSC

Appearances:   MAINETTI, MAINETTI & O'CONNOR, PC
         Attorneys for Plaintiff
         130 North Front Street
         Kingston, New York 12401
         By: Michael Kolb, Esq.

         CARTAFALSA, SLATTERY, TURPIN & LENOFF
         Attorneys for Defendants Marjam Supply Co., Inc., Marjam Supply
           of Bayshore, Inc., and Marjam Supply of Rewe Street, LLC
         660 White Plains Road Suite 400
         Tarrytown, New York 10591
         By: Christopher J. Turpin, Esq.

1

SHANTZ & BELKIN
Attorneys for Defendants Playhouse and Elwynn Limited
Partnership, Woodstock Commons Housing Development
      Funding Company, Inc., Libolt & Sons, Inc., d/b/a Affordable
      Housing Concepts
26 Century Hill Drive Suite 202
Latham, New York 12110
By: M. Randolph Belkin, Esq.

THE LAW OFFICES OF CRAIG P. CURCIO
Attorneys for Defendant The Rocker II Drywall Services, LLC
384 Crystal Run Road Suite 202
Middletown, new York 10941
By: Ryan Bannon, Esq.

Cahill, J.:

The underlying incident occurred on July 30, 2012 during construction of multi-family buildings on property owned by defendant Playhouse and Elwynn Limited Partnership, Woodstock Commons Housing Development Funding Company, Inc., (hereinafter "Woodstock Commons"), located in Woodstock, New York. In connection with such construction, Woodstock Commons hired defendant Libolt & Sons, Inc., d/b/a Affordable Housing Concepts (hereinafter "Libolt") as its general contractor who hired defendant D&J Plumbing and Heating (hereinafter "D&J") to perform the HVAC work; plaintiff was employed by D&J. Defendant The Rocker II Drywall Services, LLC (hereinafter "Rocker") was hired by Libolt to supply and install the sheetrock. In connection therewith, Rocker began installing pre-rock in 2012 which thereafter permitted the other subcontractors to begin their work on the inside of the buildings. When that work was complete in July 2012, Libolt told Rocker to come back to finish the

2

final sheetrock. Rocker hired defendant Marjam Supply Co., Inc., Marjam Supply of Bayshore, Inc., Marjam Supply of Rewe Street LLC (hereinafter "Marjam") to supply and deliver the sheetrock to the property.

On July 23 and 24 of 2012, Marjam delivered the sheetrock to the property and, allegedly unknown to Rocker, Marjam hired defaulted defendant Jumpstart Realty (hereinafter "Jumpstart") to have its laborers accompany Marjam's delivery truck to offload and distribute the sheetrock to specific buildings on the site. Rocker maintains that while it would tell Marjam when to deliver the materials and what building to place them in, no further directions or instructions were given to Marjam. Marjam does not dispute Rocker's claim and further maintains that it did not instruct Jumpstart on how to perform its work or how to stack the sheetrock, except to give the address of each building and the amount of material to be offloaded. In those instances where Marjam's own workers would perform both the delivery and offloading, their standard practice was to stack the sheets of drywall on its side, up against the wall at an angle.

While it appears that the sheetrock was approximately four feet high and stacked at its side, it is disputed as to whether it was stacked at an appropriate angle or stored parallel to the wall. While Rocker intended to start installing the sheetrock the day after the delivery was complete, testimony revealed that Libolt told it to hold off on installing the sheetrock because there was a problem with the HVAC inspection. Rocker maintains that due to Libolt's instructions to delay the installation, it never observed the actual

3

placement of the sheetrock and had not entered the building where the incident took place until after the accident. It did, however, observe after the accident that debris on the sheetrock indicated that work had been performed directly above the sheetrock during the week between the delivery and the underlying incident.

Plaintiff claims that on July 30, 2012, he went into Building A-1 on the second floor to seal the ventilation system. While he observed the stacked sheetrock, and had no reservations about entering the room where it was stored, he maintains that he has no specific recollection as to whether or not it was stored at an angle against the wall. He testified that after walking past the sheetrock on his right at a distance of about four feet, he pivoted to the left and then the sheetrock somehow moved off the wall and fell onto his ankle, causing severe injuries due to its volume and weight; he maintained that he felt no vibration or sensed any movement preceding the occurrence and that no laborer was working in the room at that time, although work was being performed in that vicinity some time between the storage of the sheetrock and plaintiff's injury. With portions of the top of the sheetrock broken off due to impact, plaintiff maintains that such sheetrock should have been properly positioned and secured by appropriate bracing. The plaintiff having alleged numerous causes of action premised on violations of Labor Law §§ 240 (1), 240 (6), 200 and common law negligence, numerous motions and cross-motions for summary judgment were propounded by Rocker, plaintiff, Woodstock Commons, Libolt and Marjam.

4

Addressing first plaintiff's Labor Law § 240 (1) claim, it is well settled that in order to impose strict liability upon the above defendants, plaintiff must demonstrate that "'a failure to provide the required protection at a construction site [] proximately caused the injury and that 'the injury sustained is the type of elevation-related hazard to which the statute applies'" (Wright v Ellsworth Partners, LLC, 143 AD3d 1116, 1117 [2016], quoting Oakes v Wal-Mart Real Estate Bus. Trust, 99 AD3d 31, 34 [2012], quoting Wilinski v 334 E. 92nd Hous. Dev. Fund Corp, 18 NY3d 1, 7 [2011]).  While "'not every object that falls on a worker [] gives rise to the extraordinary protections of Labor Law § 240 (1)'" (Narducci v Manhasset Bay Assoc., 96 NY2d 259, 267 [2001]), liability under such section will not be precluded "simply because the falling object and the injured worker are located on the same level" (Wright v. Ellsworth Partners, LLC, supra, citing Wilenski v. 334 E. 92nd Hous. Dev. Fund Corp, supra at 7) – an argument propounded here in support of the claim.

Having reviewed Wilenski, Wright, Hebbard v United Health Servs. Hosps., Inc. (135 AD3d 1150 [2016]) and Oakes, and acknowledging the extreme weight of the stacked sheetrock that fell onto plaintiff who is five feet, nine inches tall, this court must conclude that where, as here, the injured worker and the falling object are located on the same level AND there is no height differential between the falling object and the worker, liability under Labor Law § 240 (1) is precluded as a matter of law, notwithstanding the fact that the force of gravity, acting on these heavy stacks of sheetrock, caused severe

5

injuries to plaintiff.

Next reviewing the cause of action under Labor Law § 241(6), plaintiff alleges that defendants violated 12 NYCRR 23-2.1 (a)(1), promulgated by the Commissioner of Labor, which sets forth a specific standard of care in that "[a]ll building materials shall be stored in a safe and orderly manner. Material piles shall be stable under all conditions and so located that they do not obstruct any passageway, walkway, stairway or other thoroughfare, (id)." Since such regulation applies to conditions in passageways, walkways, stairways or other thoroughfares, however, and the accident here occurred in a second floor room where the passageway was unobstructed, defendants Libolt and Woodstock Commons maintain that plaintiff cannot rely on this regulation to buttress a Labor Law § 241(6) cause of action. Plaintiff responds by urging this court to determine that there are two separate requirements: the way in which the materials must be stored and the placement of such materials so as to not obstruct a passageway. Under this interpretation, and there being a question of fact surrounding the manner in which the materials were stored, plaintiff relies on Hebbard v. United Health Servs. Hosps., Inc. (supra) which holds that the manner of storage, even if not blocking a passageway, may be sufficient to fall within the ambit of the regulation.

With the underpinnings of a viable Labor Law § 241 (6) claim predicated upon "'the violation of a regulation setting forth a specific standard of conduct applicable to the working conditions which existed at the time of the injury and . . . the violation . . .

6

[being] the proximate cause of the injury'" (Hebbard v. United Health Servs. Hosps., Inc., supra at 1151, quoting Scribner v. State of New York, 130 AD3d 1207, 1210 [2105]), this court must conclude that had such regulation been meant to be read in the manner urged by plaintiff, the general duty to store the materials in a "safe and orderly manner" would "not set forth a directive sufficiently specific to support a cause of action under Labor Law § 241(6)" (Ginter v. Flushing Terrace, LLC, 121 AD3d 840, 844 [2nd Dept. 2014]). Under these circumstances and with there being no viable challenge to the prima facie proof establishing that the sheetrock in issue did not obstruct "any passageways, walkway, stairway or other thoroughfare," defendants' motions and cross-motions seeking a dismissal of this cause of action must be granted, even if it is found that in response to the prima facie proof propounded by defendants as to the propriety of the manner in which the sheetrock was stored, plaintiff raised a triable issue of fact (see Ginter v. Flushing Terrace, LLC, 121 AD3d 840 [2nd Dept. 2014]; Guallpa v. Leon D. DeMatteis Constr. Corp., 121 AD3d 416 [1st Dept. 2014]; Desena v. North Shore Hebrew Academy, 119 AD3d 631 [2nd Dept. 2014]; Marrero v. 2075 Holding Co., LLC 106 AD3d 408 [1st Dept. 2013]; Grygo v. 1116 Kings Highway Realty, LLC, 96 AD3d 1002 [2nd Dept. 2012] lv denied 20 NY3d 859 [2013]; Ghany v. BC Tile Constr., Inc., 95 AD3d 768 [1st Dept. 2012]).

The remaining Labor Law § 200 claim against Libolt is premised upon a codification of the common law duty that owners and general contractors have to provide

workers with a safe place to work. While plaintiff agreed to voluntarily dismiss such claims against all defendants other than Libolt, Libolt maintains that it is entitled to summary judgment because its proffered testimony of Rocker and Marjam established that it was stored properly and that should it ultimately be established otherwise, it did not have the authority to supervise or control either plaintiff's work or the manner of delivery and placement of the sheetrock by the subcontractors, despite its broad authority of supervision as the general contractor. With such claims unrefuted, this cause of action must be dismissed; Libolt's retention of general supervision over the conduct of the project pursuant to its contract with Woodstock Commons is insufficient to impose liability (see Ryder v Mount Loretto Nursing Home, Inc., 290 AD2d 892, 894 [2002]).

Finally, as to the motions seeking a dismissal of the common law negligence claims against Rocker, Libolt and Marjam, this court finds that Libolt established its prima facie entitlement to such relief for all of the reasons articulated with respect to the Labor Law § 200 claim. With respect to Rocker, while it maintains that it was not permitted to return to the site after delivery so that the HVAC work could be corrected and that it had no authority to do anything at the job site other than "supply and install" the sheetrock, the determinative issue here is whether it supervised or controlled the manner in which Marjam or its subcontractor did their work, or exercised supervision or control of plaintiff at the time of the injury. For these reasons, this cause of action against Rocker must fail. With respect to Marjam, since it presented prima facie evidence

8

indicating that it hired an independent contractor to unload and place the sheetrock in the buildings and established that it did not control the details, means or methods of performance, nor create or have constructive notice of the allegedly dangerous condition, the failure of plaintiff to present a viable challenge thereto warrants an award of summary judgment to Marjam (see Dewitt v Pizzagalli Constr. Co., 183 AD2d 991, 992 [1992]). To the extent that the parties raised other contentions not specifically addressed herein, those contentions have been reviewed and rejected as without merit.

This shall constitute the Decision and Order of the court. The original Decision and Order and all other papers are being delivered to the Supreme Court Clerk for transmission to the Ulster County Clerk for filing. The signing of this Decision and Order shall not constitute entry or filing under CPLR § 2220. Counsel is not relieved from the applicable provisions of that rule regarding notice of entry.

SO ORDERED.

Dated: Kingston, New York
January 26, 2017

ENTER,

_____
CHRISTOPHER E. CAHILL, JSC

Papers considered: Notice of Motion dated August 11, 2016 with Affirmation in Support by Ryan Bannon, Esq., dated August 11, 2016 with exhibits; Notice of Cross-Motion dated September 26, 2016 with Affirmation in Support by M. Randolph Belkin, Esq., dated September 26, 2016 with exhibits; Notice of Motion dated October 14, 2016 with Affirmation in Support by Christopher J. Turpin, Esq., dated October 14, 2016 with

9

exhibits; Notice of Cross-Motion for Summary Judgment dated October 17, 2016 with Affirmation in Opposition and in Support of Cross-Motion by Michael Kolb, Esq., dated October 17, 2016 with exhibits; Affirmation in Opposition by Ryan Bannon, Esq., dated November 10, 2016; Plaintiff's Affirmation in Opposition from Michael Kolb, Esq., dated November 14, 2016 with exhibits; Reply and Responding Affirmation by M. Randolph Belkin, Esq., dated November 14, 2016 with exhibits; Plaintiff's Affirmation in Reply by Michael Kolb, Esq., dated November 18, 2016; Plaintiff's Affirmation in Reply by Michael Kolb, Esq., dated November 18, 2016; Reply Affirmation of Christopher J. Turpin, Esq., dated November 21, 2016; Reply Affirmation of Ryan Bannon, Esq., dated November 18, 2016;