**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
**----------------------------------------------------------------------X**

NICHOLAS WILEY,                                    **Case No.: 1:24-cv-00072**
                                                   **(MAD/ML)**

                          Plaintiff,

            -against-

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY,

                          Defendant.
**----------------------------------------------------------------------X**

---

## MEMORANDUM OF LAW OF PLAINTIFF NICHOLAS WILEY IN SUPPORT OF HIS CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

**TREYBICH LAW, P.C.**
272 Mill Street
Poughkeepsie, NY 12601
(845) 554-5295
*Attorneys for the Plaintiff*
*Nicholas Wiley*

**Table of Contents**

TABLE OF CONTENTS                                                                    i

TABLE OF AUTHORITIES                                                                 iii

PRELIMINARY STATEMENT                                                                1

STATEMENT OF FACTS                                                                   1

ARGUMENT                                                                             3

POINT I
AMBIGUITIES IN AN INSURANCE POLICY ARE CONSTRUED
AGAINST THE INSURER, THE BURDEN IS UPON THE INSURER
TO SHOW THAT THE RELIED UPON EXCLUSION APPLIES AND
IS SUBJECT TO NO OTHER REASONABLE INTERPRETATION                                     3

POINT II
THERE IS COVERAGE UNDER THE POLICY AND PLAINTIFF
IS ENFORCING HIS RIGHTS UNDER NEW YORK LAW                                           4

POINT III
THE EXCLUSION RELIED UPON BY THE DEFENDANT IS AMBUGUOUS,
THE PLAINTIFF'S PROFERRED INTERPRETATION IS REASONABLE, AND
SUCH AMBIGUITY MUST BE RESOLVED IN THE PLAINTIFF'S FAVOR                             5

POINT IV
IF THE COURT FINDS THAT THE PLAINTIFF IS NOT ENTITLED TO
JUDGMENT AGAINST THE DEFENDANT BASED UPON ITS
OBLIGATION TO JUMPSTART REALITY, LLC, PLAINTIFF IS
ENTITLED TO JUDGMENT BASED UPON DEFENDANT'S
OBLIGATION TO CHICKETA WATSON                                                        13

POINT V
THE DEFENDANT'S MOTION MUST BE DENIED                                                15

    A. DEFENDANT MAKES SEVERAL IRRELEVANT AND UNSUPPORTED
       STATEMENTS IN ITS MEMORANDUM OF LAW WHICH MUST BE
       DISREGARDED                                                                15

    B. THE DEFENDANT WAIVED THE EXCLUSION                                           16

    C. THE DEFENDANT'S RELIANCE UPON THREE CASES IS MISPLACED                       18

    D. THE DEFENDANT'S PROPOSED INTERPRETATION IS
       UNREASONABLE                                                               20

**POINT VI**
**PLAINTIFF IS ENTITLED TO PRE-JUDGMENT INTEREST FROM**
**DEFENDANT, EVEN IN EXCESS OF THE INSURANCE POLICY LIMITS**      **22**

**CONCLUSION**      **25**

**Table of Authorities**

**Cases**

242-44 E. 77th St., *LLC v. Greater N.Y. Mut. Ins. Co.*,
    31 A.D.3d 100, 103-104 (1st Dept., 2006) — 11

Ability Transmission, Inc. v John's Transmission, Inc.,
    150 AD3d 1056, 1057 (2d Dept., 2017) — 17

Adames v Nationwide Mut. Fire Ins. Co., 55 AD3d 513, 515 (2d Dept., 2008) — 17

Aetna Cas. &Sur. Co. v. Home Ins. Co., 882 F. Supp. 1328, 1353 (SDNY 1995) — 24

Avondale Industries, Inc. v. Travelers Indem. Co.,
    887 F.2d 1200, 1204-1205 (2d Cir. 1989) — 4

Belt Painting Corp. v. TIG Ins. Co., 100 NY2d 377, 383 (2003) — 3

California Specialty Insulation, Inc. v. Allied World Surplus Lines Ins. Co.,
    102 Cal.App.5th 1, 8 (CA Ct of Apps, 2nd Dist., 7th Div., 2024) — 7

Camperlino v. Bargabos, 96 A.D.3d 1582, 1583-1584 (4th Dept. 2012) — 11

Century Sur. Co. v. Franchise Contractors, LLC, (14 Civ 277 (SDNY March 10, 2016) — 18

China Privatization Fund (Del), L.P. v. Galaxy Entertainment Group Ltd.,
    95 A.D.3d 769, 770 (1st Dept. 2012) — 5-6

Edgewater Growth Capital Partners, L.P. v Greenstar N. Am. Holdings, Inc.,
    NY Slip Op 30183(U) (Sup. Ct., NY Cty, 2013) — 11

Eastman Kodak Co. v. Altek Corp., 936 F.Supp.2d 342, 351 (SDNY 2013) — 12

Finest Investments v. Security Trust Co. of Rochester,
    96 AD2d 227, 230 (4th Dept. 1983), *affm.*, 61 NY2d 897 (1984) — 20, 21

General Acc. Ins. Group v Cirucci, 46 NY2d 862, 864 (1979) — 17

Hartford Ins. Co. v. County of Nassau, 46 NY2d 1028 (1979) — 15

Imation Corp. v. Koninklijke Philips Elecs. N.V., 586 F3d 980, 990 (Fed Cir. 2009) — 12

Innophos, Inc. v. Rhodia, S.A.,
    38 A.D.3d 368, 372 (1st Dept., 2007) *aff'd*, 10 NY3d 25 (2008) — 11

James River Insurance Company v. Keyes2Safety, Inc.,
　　No. 11 C 901 (NDIL Jul. 24, 2012)　　　　　　　　　　　　19

James River Ins. Co. v. Ultratex Special Effects Inc.,
　　22 F.4th 1246, 1255-1256 (11th Cir. 2022)　　　　　　　　7

Lang v. Hanover Ins. Co., 3 NY3d 350, 356 (2004)　　　　　　16, 18

Manufacturer's & Traders Trust Co. v. Reliance Ins. Co., 8 NY3d 583, 589 (2007)　　24

Ment Bros. Iron Workers Co. Inc. v. Interstate Fire & Cas. Co.,
　　702 F3d 118, 121 (2d Cir. 2012))　　　　　　　　　　　　4

Merchants Mutual Ins. Co. v. Rutgers Casualty Ins. Co.,
　　2010 NY Slip Op 30506(U) (Sup. Ct., Richmond Cty, 2010),
　　aff'd 84 AD3d 756 (2d Dept. 2011)　　　　　　　　　　　9

NFL v. Vigilant Ins. Co., 36 AD3d 207, 214 (1st Dept. 2006)　　11

North American Building Maintenance, Inc. v. Firemen's Fund Ins. Co.,
　　40 Cal.Rptr.3d 468, 479, 137 Cal.App.4th 627 (CA Ct. of Apps., 5th Dist., 2006)　7

Olin Corp. v. OneBeacon America Ins. Co., 864 F.3d 130, 152 (2d Cir. 2017)　　24

Platek v. Town of Hamburg, 24 N.Y.3d 688, 693-694 (2015)　　3

Pope v. New York Property Ins. Underwriting Assoc.,
　　112 AD2d 984, 985 (2d Dept. 1985) aff'd. 66 NY2d 857 (1985)　　23

Reyes v. Metromedia Software, Inc., 840 F.Supp.2d 752, 755 (SDNY 2012)　　6

Samovar of Russia Jewelry Antique Corp. v. Generali,
　　102 AD2d 279, 281 (1st Dept. 1984)　　　　　　　　　　23

Turner Construction Co. v. American Manufacturers Mut. Ins. Co.,
　　485 F.Supp.2d 480, 490 (SDNY 2007) aff'd., 341 Fed. Appx. 684 (2d Cir. 2009)　23

U.S. Fire Ins. Co. v. Federal Ins. Co., 858 F2d 882, 887-889 (2d Cir. 1988)　　23

U.S. Liability Ins. Co. v. Benchmark Construction Services, Inc.,
　　31 F.Supp.3d 315, 321 (D.Mass. 2014), rev'd., 797 F3d 116, 119 (1st Cir. 2015)　7, 8

U.S. Liability Ins. Co. v. WW Trading Co., 813 Fed. Appx. 636
　　(Summary Order) (2d Circ. 2020)　　　　　　　　　　　3

U.S. Underwriters Ins. Co. v. 101-19 37th Avenue LLC,
    642 Fed. Appx. 10, 11 (2d Circ. 2016) (Summary Order)    8

US Underwriters Ins. Co. v. Kenfa Madison, LLC,
    No. 20-CV-2761 (EDNY, August 28, 2023)    9

Varda, Inc. v. Ins. Co. of North America, 45 F3d 634, 640 (2d Cir. 1995)    23

Wellington Specialty Insurance Co. v. Ling, (3:08-CV-738-L (N.D. Tex. Jul. 17, 2009)    19

**Rules**

CPLR 5001(a)    22, 24

CPLR 5003    24 in [fn]

CPLR 5004    22, 24 in [fn]

**Statutes**

NY Insurance Law §3420    18

NY Insurance Law §3420(a)    4-5

NY Insurance Law §3420(a)(2)    1, 2, 22, 23

NY Insurance Law §3420(d)(2)    15, 16

**Treatises**

Cambridge University Press & Assessment (2024).
    Cambridge English Dictionary. Retrieved November 12, 2024,
    from dictionary.cambridge.org/us/dictionary/english/any)    6-7

9A Steven Plitt at al., Couch on Ins. § 129:2 (3d ed.2014)."    8

## **PRELIMINARY STATEMENT**

This action seeks to recover of the defendant, Mesa Underwriters Specialty Ins. Co. f/k/a Montpelier U.S. Insurance Company (hereinafter, the "Defendant") pursuant to the plaintiff – Nicholas Wiley's (hereinafter, the "Plaintiff") right of action against an insurer pursuant to NY Insurance Law 3420(a)(2) for injuries sustained by the Plaintiff as a result of the negligence of Chicketa Watson and Jumpstart Reality LLC - the insureds of Defendant under policy number MP0006001008894 (hereinafter, the "Insurance Policy") - (hereinafter, the "Insureds"), in the State of New York, Ulster County, having previously obtained a judgment against the Insureds under Ulster County Index Number 13-1727.

This action seeks to recover the value of the Insurance Policy[1], with interest, the costs and disbursements of this action, along with such other and further relief as the Court deems proper.

## **STATEMENT OF FACTS[2]**

Plaintiff was present upon premises owned by "Playhouse and Elwynn Limited Partnership" and "Woodstock Commons Housing Development Funding Company, Inc." located in Woodstock, NY. (hereinafter, the "Owner"); (Exhibit A, ¶¶4, 10)[3]

The Owner hired Libolt & Sons, Inc. to serve as the general contractor for a project at said premises. (hereinafter, the "General Contractor"); (Exhibit A, ¶5)

The General Contractor hired DJ Heating & Cooling, as an HVAC subcontractor, to perform HVAC work at the premises. (hereinafter, the "HVAC Subcontractor"); (Exhibit A, ¶6)

---

[1] As per the declaration to the Insurance Policy, the policy limits are one million dollars ($1,000,000.00) per occurrence. (Exhibit 1, page 13)

[2] The Statement of Facts is drawn from the Parties joint stipulation of facts, the declaration of Nicholas Wiley, the affirmation of Michael Treybich, and the Exhibits annexed thereto.

[3] References to Exhibit A are to the stipulation of facts between the parties. References to numbered exhibits, refer to the exhibits annexed thereto.

Separately, to perform sheetrock installation, the General Contractor hired "Rocker II Drywall Services, LLC" to perform sheetrock installation at the premises. (hereinafter, the "Sheetrock Subcontractor"); (Exhibit A, ¶7)

The Sheetrock Subcontractor purchased its materials, namely sheetrock, from Marjam Supply Co., Inc. (hereinafter, the "Material Supplier"); (Exhibit A, ¶8)

Finally, the Material Supplier hired Jumpstart Reality, LLC to deliver the sheetrock purchased by the Sheetrock Subcontractor to the premises (Exhibit A, ¶9)

Plaintiff sued in NY Supreme Court, Ulster County, under Index Number 13-1727 to recover damages for his injuries against, among others, the Insureds. (Exhibit A, ¶11); (Exhibit 2)

The Plaintiff was awarded judgment against the Insureds on January 6, 2021[4], which was entered with the Ulster County Clerk on January 22, 2021, in the amount of one million four hundred thousand dollars ($1,400,000.00).  (hereinafter, the "Judgment"); (Exhibit 5)

The Judgment remains unsatisfied today. (Wiley Declaration ¶11)

The Insurance Policy was in effect from December 7, 2011 to December 7, 2012. (Exhibit 1, page 3)

Plaintiff was injured on July 30, 2012 when sheetrock delivered and negligently stacked by the Insured's personnel fell on him. (Exhibit A, ¶10); (Wiley Declaration, ¶7)

Pursuant to NY Insurance Law §3420(a)(2), notice of entry of the Judgment was served upon the Insureds and the Defendant on June 30, 2023. (Exhibit A, ¶17); (Treybich Affm. ¶6)

This action was commenced in the NY Supreme Court, Ulster County, on November 14, 2023, and on January 16, 2024 was removed to the United States District Court for the Northern District of New York by Defendant on the basis of diversity jurisdiction. (Exhibit A, ¶¶7, 8)

---

[4] The signed judgment is erroneously dated as having been signed on January 6, 2020.

## ARGUMENT

### POINT I
### AMBIGUITIES IN AN INSURANCE POLICY ARE CONSTRUED AGAINST THE INSURER, THE BURDEN IS UPON THE INSURER TO SHOW THAT THE RELIED UPON EXCLUSION APPLIES AND IS SUBJECT TO NO OTHER REASONABLE INTERPRETATION

The Plaintiff agrees with the Defendant that New York Law applies.

The NY Court of Appeals has directed that "[w]e begin with fundamentals. We read an insurance policy in light of 'common speech' and the reasonable expectations of a businessperson. As we have repeatedly held, an insurer has a duty to defend if the allegations state a cause of action that gives rise to the reasonable possibility of recovery under the policy. Moreover, to 'negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case'. It follows that policy exclusions are given a strict and narrow construction, with any ambiguity resolved against the insurer." (internal citations omitted); (Belt Painting Corp. v. TIG Ins. Co., 100 NY2d 377, 383 [2003])

"The burden of proof 'will rest with the insurer to demonstrate that the loss compromised by the insured was not within policy coverage,' and it is a 'heavy' burden." (U.S. Liability Ins. Co. v. WW Trading Co., 813 Fed. Appx. 636 [Summary Order] [2d Circ. 2020]); (internal citations omitted)

The courts must "construe the policy in a way that affords a fair meaning to *all* of the language employed by the parties in the contract and leaves no provision without force and effect." (emphasis in original); (Platek v. Town of Hamburg, 24 N.Y.3d 688, 693-694 [2015])

In restating the law of New York, the US Court of Appeals for the Second Circuit state that "'[B]efore an insurance company is permitted to avoid policy coverage, it must ... establish[] that

Page 3

the exclusions or exemptions apply in the particular case, and that they are subject to no other reasonable interpretation.' To avoid the duty therefore the insurer must demonstrate that the allegations in the underlying complaints are 'solely and entirely' within specific and unambiguous exclusions from the policy's coverage." (internal citations omitted); (Avondale Industries, Inc. v. Travelers Indem. Co., 887 F.2d 1200, 1204-1205 [2d Cir. 1989]; *see also*, Ment Bros. Iron Workers Co. Inc. v. Interstate Fire & Cas. Co., 702 F3d 118, 121 [2d Cir. 2012])

**POINT II**
**THERE IS COVERAGE UNDER THE POLICY AND PLAINTIFF**
**IS ENFORCING HIS RIGHTS UNDER NEW YORK LAW**

The named insured in the Insurance Policy is Jumpstart Reality LLC[5] (Exhibit 1, page 13).

The Insurance Policy was effective December 7, 2011 to December 7, 2012 and Plaintiff was injured on July 30, 2012, during this coverage period. (Exhibit 1, page 3); (Exhibit A, ¶10)

The member of Jumpstart Reality LLC, Chicketa Watson, was also an insured, "but only with respect to the conduct" of the named insured's business. (Exhibit 1, page 32, Section II [1][c])

There is coverage under the Insurance Policy, as the Defendant agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (Exhibit 1, page 25)

"'Bodily injury' means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (Exhibit 1, Section V – Definitions, 3, at page 36)

The question then, is whether an exclusion to coverage applies, discussed below.

New York law provides a right of action to an injured party against an insurer under certain circumstances. Specifically, NY Insurance Law §3420(a), provides that:

> "(a) No policy or contract insuring against liability for injury to person, except as provided in subsection (g) of this section, or against liability for injury to, or destruction of, property shall be

---

[5] Erroneously identified in the Insurance Policy as "Jumpstart Realty LLC".

issued or delivered in this state, unless it contains in substance the following provisions or provisions that are equally or more favorable to the insured and to judgment creditors so far as such provisions relate to judgment creditors:

\*\*\*

(2) A provision that in case judgment against the insured or the insured's personal representative in an action brought to recover damages for injury sustained or loss or damage occasioned during the life of the policy or contract shall remain unsatisfied at the expiration of thirty days from the serving of notice of entry of judgment upon the attorney for the insured, or upon the insured, and upon the insurer, then an action may … be maintained against the insurer under the terms of the policy or contract for the amount of such judgment not exceeding the amount of the applicable limit of coverage under such policy or contract."

Plaintiff obtained the Judgment against the Insureds. (Exhibit 5)

Plaintiff served notice of entry of the Judgment with a copy of the Judgment upon the Insureds and the Defendant on June 30, 2023. (Exhibit A, ¶17)

The judgment was unsatisfied more than thirty days from such service, and remains unsatisfied today. (Wiley Declaration, ¶11)

Thus, there is coverage under the Insurance Policy, and as discussed above, the burden is on the Defendant to show that the relied upon exclusion applies in this particular case, that it is subject to no other reasonable interpretation, and Plaintiff has standing to bring this action.

**POINT III**
**THE EXCLUSION RELIED UPON BY THE DEFENDANT IS AMBUGUOUS, THE PLAINTIFF'S PROFERRED INTERPRETATION IS REASONABLE, AND SUCH AMBIGUITY MUST BE RESOLVED IN THE PLAINTIFF'S FAVOR**

The exclusion relied upon by the Defendant is ambiguous for several reasons.

An agreement is unambiguous if the language used "has a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion" . . . On the other hand, a contract is ambiguous if "on its face [it] is reasonably susceptible of more than one interpretation" (China

Page 5

Privatization Fund (Del), L.P. v. Galaxy Entertainment Group Ltd., 95 A.D.3d 769, 770 [1st Dept. 2012]; *see*, Reyes v. Metromedia Software, Inc., 840 F.Supp.2d 752, 755 [SDNY 2012])

The endorsement which contains the exclusion relied upon by the Defendant sets forth:

"This Insurance does not apply to:

\*\*\*

'Bodily Injury' to:
(1) An 'employee', 'temporary worker', 'leased employee', or independent contractor of the insured or any additional insured or employee of any independent contractor arising out of and in the course of:
(A) Employment by the insured or any additional insured or independent operator
(B) Performing duties related to the conduct of the insured or any additional insured's business; or
(C) Arising out of the injured party's employment"

(Exhibit 1, page 18); (hereinafter, the "Exclusion")

The Insurance Policy contains definitions of the words used throughout, but notably, the term "independent contractor" is undefined, and because such term refers to a relationship formed by a contract, the inclusion thereof begs the question: "whose independent contractor?"

Further, the inclusion of the modifier "any" does not reduce the ambiguity of the otherwise undefined "independent contractor", and may in and of itself render the provision ambiguous.

Specifically, the several dictionary definitions of "any", can be used as either a determiner[6], an adjective or a pronoun, and several of its various definitions includes "Some, or even the smallest amount or number of" (determiner, pronoun); "one of or each of a particular type of person or thing when it is not important which" (determiner, pronoun); "at all or in the least" (adverb); "some, or even the smallest amount (of)" (adjective, pronoun); "one of, or each of, or a stated amount of" (something that is more than one or has a number of parts), without saying which particular part is meant" (adjective, pronoun). (Cambridge University Press & Assessment [2024].

---

[6] "a word (such as an article, possessive, demonstrative, or quantifier) that makes specific the denotation of a noun phrase"

Cambridge   English   Dictionary.   Retrieved   November   12,   2024,   from dictionary.cambridge.org/us/dictionary/english/any)

The Courts of other jurisdictions have held that "when the word 'any' modifies an undefined term, its utility in defining that term is limited at best". (California Specialty Insulation, Inc. v. Allied World Surplus Lines Ins. Co., 102 Cal.App.5th 1, 8 [CA Ct of Apps, 2nd Dist., 7th Div., 2024], *citing*, U.S. Liability Ins. Co. v. Benchmark Construction Services, Inc., 31 F.Supp.3d 315, 321 [D.Mass. 2014], *rev'd.*, 797 F3d 116 [1st Cir. 2015] - interpreting whether an insurance policy exclusion relating to "any contractor" applies; *also citing*, North American Building Maintenance, Inc. v. Firemen's Fund Ins. Co., 40 Cal.Rptr.3d 468, 479, 137 Cal.App.4th 627 [CA Ct. of Apps., 5th Dist., 2006]; *see also*, James River Ins. Co. v. Ultratex Special Effects Inc., 22 F.4th 1246, 1255-1256 (11th Cir. 2022) – affirming the trial court when it found, *inter alia*, that "the phrase 'any insured' was ambiguous when used in an employer's liability exclusion" because it "could be interpreted either to mean only singularly 'any one of the insureds' or could apply collectively to the whole group of insureds.")

As used in the Exclusion, the word "any", as it is applied to the undefined term "independent contractor", can be interpreted to mean singularly an independent contractor of any one of the Insureds or the additional insureds, or to the broader independent contractor of anyone in the universe, as the Defendant argues.

The "L-500 endorsement", which is similar to the Exclusion, is issued by, *inter alia*, United States Liability Insurance Company, and modifies the policies it is appended to by changing the "Employer's Liability" exclusion, by stating that such insurance does not apply to:

> "[(I)(2)(e)](2) "Bodily injury" to any contractor, subcontractor or any 'employee', 'volunteer worker', 'temporary worker' or 'casual laborer' of any contractor or subcontractor arising out of or in the course of rendering or performing services of any kind or nature

whatsoever by such contractor, subcontractor or 'employee', 'volunteer worker', 'temporary worker' or 'casual laborer' of such contractor or subcontractor for which any insured may become liable in any capacity[.]"

(U.S. Liability Ins. Co. v. Benchmark Construction Services, Inc., 797 F3d 116, 119 [1st Circuit, 2015])

In interpreting the L-500 endorsement, the US Court of Appeals for the First Circuit found ambiguities, including in the meaning of "contractor". Defendant herein argues as the Benchmark District Court held that "'contractor' means '**anyone with a contract**'", the Court of Appeals for the First Circuit reversed, finding that "'contractor' means someone with a contract **with the insured**". (emphasis added); (Benchmark, 797 F3d at 123-125)

The US Court of Appeals for the First Circuit found that the "reasonable expectations of the insured support this outcome. The purpose of a commercial general liability insurance policy, like the one Benchmark purchased from USLIC, is 'to protect the insured against losses to third parties arising out of the operation of the insured's business.' (9A Steven Plitt at al., Couch on Ins. § 129:2 (3d ed.2014)." (Benchmark, 797 F3d at 122)

In another action involving the L-500 endorsement, the US Court of Appeals for the Second Circuit, vacated and remanded a memorandum and order of the US District Court for the Eastern District of New York which had declared the insurer was not obligated to defend and indemnify the insured, stating that "[t]he words 'contractor' and 'subcontractor' are not defined in the policy at issue. As a result, we are unable to determine whether Feldman Lumber, the employer of the injured party, is a 'contractor' or 'subcontractor' within the meaning of the exclusion." (U.S. Underwriters Ins. Co. v. 101-19 37th Avenue LLC, 642 Fed. Appx. 10, 11 [2d Circ. 2016] [Summary Order])

The United States District Court for the Eastern District of New York, denied reconsideration of a prior memorandum and order denying, *inter alia*, summary judgment. In interpreting the "L-500 endorsement" the Court explained: "[a]s the terms 'contractor' and 'subcontractor' in the L-500 Endorsement imply, this relationship must be one grounded in contract. The property owner must delegate a duty to a general contractor by contract, who in turn delegates a subset of that duty to a subcontractor by contract." (US Underwriters Ins. Co. v. Kenfa Madison, LLC, No. 20-CV-2761 [EDNY, August 28, 2023])

In Merchants Mutual Ins. Co. v. Rutgers Casualty Ins. Co. (2010 NY Slip Op 30506[U] [Sup. Ct., Richmond Cty, 2010], *aff'd* 84 AD3d 756 [2d Dept. 2011]), a similar exclusion to the Exclusion was contemplated by the New York Courts.

The trial court in Merchants Mutual Ins. Co. held that "the caselaw establishes that, given the plain meaning of the exclusion, its purpose is to relieve the insurer of liability for a claim arising out of bodily injury to an employee of a contractor **in privity with the insured**." (emphasis added); (Merchants Mutual Ins. Co., 2010 NY Slip Op 30506[U])

The NY Supreme Court, Appellate Division, Second Department, affirmed, and held that "insofar as the exclusionary language is applied to one subcontractor's potential liability for injuries sustained by an employee of another subcontractor working independently at the same job site, it is not susceptible of only one meaning and, therefore, the exclusion is ambiguous as a matter of law. As such, the disputed exclusionary clause must be construed against the insurer, Rutgers Casualty". (internal citations omitted); (Merchants Mutual, 84 AD3d at 757)

To interpret what the undefined "independent contractor" means for purposes of the Insurance Policy and the Exclusion, we look to its terms.

Page 9

The title of the endorsement which contains the Exclusion is "Limited Coverage for Contractors[7] and Employees (General Liability)", and the Exclusion's title "Employer's Liability", both imply that the Exclusion is intended to apply to a particular set of relationships.

There are two ways to parse this language, which have different implications, thus rendering this provision ambiguous.

One way, is to parse the structure of the Exclusion to exclude bodily injury to **three** categories of people, including:

1) An employee, temporary worker, leased employee, or independent contractor of the insured (the Insureds herein), or
2) An employee, temporary worker, leased employee, or independent contractor of any additional insured (the Material Supplier herein), or
3) An "employee of any independent contractor"

The Plaintiff was clearly not an employee, temporary worker, leased employee, or independent contractor of either the Insureds or the Material Supplier, and thus, the first two categories cannot apply.

Rather, the Plaintiff was an employee of the HVAC Subcontractor who was hired separately by the General Contractor outside of the scope of the Insureds' work. (Exhibit A, ¶¶6-9); (Wiley Declaration ¶¶5, 6)

The other way to parse this language, is based upon the placement of the commas in the sentence: "An 'employee', 'temporary worker', 'leased employee', or independent contractor of the insured or any additional insured or employee of any independent contractor". The placement of the commas lend themselves to the conclusion that the intent of the parties to the Insurance Policy was that the Exclusion applies to **four** categories of people, specifically, An 1. "employee",

---

[7] Not "Independent Contractors", but "Contractors" - also an undefined term.

2. "Temporary worker", 3. "leased employee", or 4. "Independent contractor of the insured or any additional insured or employee of any independent contractor".

The comma placement indicates the intention that the fourth category of persons are all related to one another.

Either way we parse this sentence, the prior terms are specific, and the final term is general, and thus, in interpreting the meaning of the general term pursuant to the *Ejusdem generis* canon of contract interpretation, the meaning of the specific terms are used to qualify the meaning of the general term. (*see*, Camperlino v. Bargabos, 96 A.D.3d 1582, 1583-1584 [4th Dept. 2012]; Edgewater Growth Capital Partners, L.P. v Greenstar N. Am. Holdings, Inc., NY Slip Op 30183[U] [Sup. Ct., NY Cty, 2013] - According to the contract interpretation principal of ejusdem generis, "the meaning of a word in a series of words is determined 'by the company it keeps'"; 242-44 E. 77th St., *LLC v. Greater N.Y. Mut. Ins. Co.*, 31 A.D.3d 100, 103-104 [1st Dept., 2006] "a series of specific words describing things or concepts of a particular sort are used to explain the meaning of a general one in the same series"; Innophos, Inc. v. Rhodia, S.A., 38 A.D.3d 368, 372 [1st Dept., 2007] *aff'd*, 10 NY3d 25 [2008]; *see also*, NFL v. Vigilant Ins. Co., 36 AD3d 207, 214 [1st Dept. 2006] - applying the closely related canon of interpretation of *noscitur a sociis* ["it is known from its associates"])

Each of the prior terms, such as "leased worker" and "temporary worker" are defined.

"'Leased worker' means a person leased **to you** by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of **your business**. 'Leased worker' does not include a 'temporary worker'." (emphasis added); (Exhibit 1, page 37, Section 5, ¶10)

"'Temporary Worker' means any person who is: (A) Furnished **to you** to substitute for a permanent 'employee'; (B) A short-term worker; or (C) Not an 'employee' or 'volunteer' worker". (emphasis added); (Exhibit 1, page 18)

The sole definition of "Employee" in the Insurance Policy is that it "includes a 'leased worker' but does not include a "temporary worker". (Exhibit 1, page 36, Section 5, ℙ5)

All of such specific terms refer to the relationship of such worker to "you" or "your" referring to the Insureds, and thus, the general term "employee of any independent contractor" must be defined in the context of the "company it keeps", and in reviewing this meaning through the lens of either *ejusdem generis* or *noscitur a sociis*, every single other category of people potentially covered by the Exclusion are those who are in privity with either the insureds or the additional insureds.

Thus, it is reasonable to interpret "employee of any independent contractor" to mean "the employee of any one of the independent contractors of the insureds or additional insureds".

This is consistent with the only other part of the Insurance Policy outside of the Exclusion in which the term "Independent Contractor" appears, in the "Special Conditions-Subcontractors" endorsement. (Exhibit 1, page 19)

The "same words used in different parts of a writing have the same meaning", thus, the term "Independent Contractor" in the "Special Conditions-Subcontractors" endorsement, has the same meaning as that in the Exclusion. (*see*, Imation Corp. v. Koninklijke Philips Elecs. N.V., 586 F3d 980, 990 [Fed Cir. 2009]; *see also*, Eastman Kodak Co. v. Altek Corp., 936 F.Supp.2d 342, 351 [SDNY 2013])

In the "Special Conditions-Subcontractors" endorsement, the Insureds are required to "obtain Certificates of Insurance … from all subcontractors or independent contractors prior to commencement of any work performed." (Exhibit 1, page 19)

This clearly implies that "independent contractors" have a relationship or are in privity with the Insureds, as an insured could not be expected to obtain certificates of insurance from those working on a project with whom they lack any connection whatsoever.

Notably, this endorsement uses the word "all" to refer to subcontractors and independent contractors, which is the Defendant's interpretation of the word "any" in the Exclusion.

The title and text of the "Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization" endorsement, further supports the Plaintiff's interpretation that additional insureds are the "owner" "lessee" or a "contractor" of the Insureds. (Exhibit 1, page 41)

The Plaintiff's proposed interpretation is reasonable, as it reflects the apparent intent of the parties to the Insurance Policy, that employees of the independent contractors of the insureds and the additional insureds are not covered by the Insurance Policy, and further, it does not render any terms surplusage or redundant, and it gives meaning to every portion of the Insurance Policy.

Therefore, the Exclusion is ambiguous, the Plaintiff's proposed interpretation is reasonable, and thus must be adopted, therefore, the Exclusion does not apply to the Plaintiff, and Plaintiff should be awarded summary judgment against the Defendant.

**POINT IV**
**IF THE COURT FINDS THAT THE PLAINTIFF IS NOT ENTITLED TO JUDGMENT AGAINST THE DEFENDANT BASED UPON ITS OBLIGATION TO JUMPSTART REALITY, LLC, PLAINTIFF IS ENTITLED TO JUDGMENT BASED UPON DEFENDANT'S OBLIGATION TO CHICKETA WATSON**

As illustrated by the chart below, the General Contractor hired the HVAC Subcontractor, who employed the Plaintiff. The General Contractor separately hired the Sheetrock Subcontractor,

which in turn purchased its sheetrock from the Material Supplier, which in turn hired Jumpstart

Reality, LLC[8] to deliver the sheetrock to the site. (Exhibit A, ¶¶6-10)



It was Jumpstart Reality's negligent stacking of sheetrock which caused it to fall and injure

Plaintiff. (Wiley Declaration, ¶7)

Chicketa Watson, a member of Jumpstart Reality, LLC, was a defendant in the underlying

lawsuit, the Judgment names her, and by virtue of being a member of the named insured LLC, she

is an insured under the Insurance Policy. (Exhibit 1, page 32, Section II 1.c.); (Exhibit 5)

There is no agreement between the HVAC Subcontractor and anyone else besides the

General Contractor or the Plaintiff, thus, the HVAC Subcontractor was a subcontractor or

independent contractor of only the General Contractor. (Wiley Declaration, ¶6)

---

[8] The named insured under the Insurance Policy.

Pursuant to the terms of the Insurance Policy, the only additional insured was the Material Supplier, who hired the Insureds to deliver the sheetrock. (Exhibit 1, page 41)

In the Insurance Policy "Separation of Insureds" section, it provides, in pertinent part that: "[e]xcept with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies: … b. Separately to each insured against whom claim is made or 'suit' is brought." (Exhibit 1, page 36, ¶7)

Thus, the line of purported contracts between the Insureds and the Plaintiff is more attenuated, as Chicketa Watson had no privity between her and any other contractor at the project site, including the Plaintiff's employer-HVAC Subcontractor.

Further, Defendant failed to disclaim coverage to Chicketa Watson, and therefore it has waived its disclaimer to her. (*see*, Exhibit 3); (NY Insurance Law §3420[d][2]; <u>Hartford Ins. Co. v. County of Nassau</u>, 46 NY2d 1028 [1979])

Therefore, if the Court finds there is no coverage afforded under the Insurance Policy as it relates to Jumpstart Reality, LLC, there is coverage under the Insurance Policy as it relates to the Chicketa Watson, and the Plaintiff's cross-motion should be granted.

**POINT V**
**<u>THE DEFENDANT'S MOTION MUST BE DENIED</u>**

**A. <u>DEFENDANT MAKES SEVERAL IRRELEVANT AND UNSUPPORTED STATEMENTS IN ITS MEMORANDUM OF LAW WHICH MUST BE DISREGARDED</u>**

As a preliminary matter, the Defendant's statements relating to the Insured's business or the premium charged by the Defendant for the Insurance Policy is irrelevant to interpreting the Insurance Policy or the Exclusion. (Defendant's Memorandum of Law, Arguments C)

Moreover, it would be just as reasonable to conclude that those who are being insured for "building material delivery" under a classification of "freight fowarders or handlers" would be

covered under their insurance policy if they delivered "building materials" to a jobsite, improperly stacked the materials or freight they delivered, and it fell on someone causing them injury, as occurred in the case which resulted in the Judgment.

Nor is there any support for the implication that the Insureds were performing operations "typical to a contractor actively performing work at a construction site" as alleged by the Defendant in its memorandum of law, but that is irrelevant, as the Insurance Policy contemplates that the Insureds would perform construction work. (*see*, Definition of "Your Work" – which is broad enough to encompass construction, page 39, ¶22; the "Exclusion – Prior Completed or Abandoned Work" endorsement, Exhibit 1, page 21; the "Exclusion – Exterior Insulation and Finish Systems (EIFS) endorsement, Exhibit 1, page 22; and the "Exclusion – Contractors – Professional Liability" endorsement, Exhibit 1, page 49 – "Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.")

Furthermore, the argument that the premium charged by the Defendant was "modest" is advanced only in the memorandum of law, is unsupported, and also irrelevant, as if the Defendant's underwriters improperly valued its premiums, that would not vitiate coverage nor change what the Insurance Policy covers or excludes from coverage.

Finally, the Defendant has waived all of its possible defenses herein, except solely the validity of its disclaimer. (Lang v. Hanover Ins. Co., 3 NY3d 350, 356 [2004])

## B.  **THE DEFENDANT WAIVED THE EXCLUSION**

Insurance Law §3420(d)(2) requires an insurer to provide its insured and any other claimant with written notice of its disclaimer as soon as is reasonably possible when a claim falls within the coverage terms but is denied based on a policy exclusion and to be effective, the disclaimer notice

must be unequivocal and unambiguous, and detail with "'a high degree of specificity ... the ground or grounds on which the disclaimer is predicated'". (Ability Transmission, Inc. v John's Transmission, Inc., 150 AD3d 1056, 1057 [2d Dept., 2017], *quoting* General Acc. Ins. Group v Cirucci, 46 NY2d 862, 864 [1979])

Grounds for disclaimer that is not specifically asserted in its notice is waived, even if such grounds would otherwise have merit. (Ability Transmission, Inc., 150 AD3d at 1057; Adames v Nationwide Mut. Fire Ins. Co., 55 AD3d 513, 515 [2d Dept., 2008]; General Acc. Ins. Group, 46 NY2d at 864)

The Defendant's basis for its disclaimer as is relevant to this action is that "The MUS 01 01 20007 12 07 Endorsement – Limited Coverage for Contractors and Employers, cited above specifically excludes coverage under your policy for "Bodily Injury" to any employee, temporary worker, leased employee, independent contractor of the insured, additional insured or independent **operator** arising out of the injured party's employment. Therefore MUSIC disclaims coverage to you for the Lawsuit." (Exhibit 3, page 7); (emphasis added)

The Exclusion provides, in pertinent part, that "[t]his insurance does not apply to…'bodily injury' to … an 'employee', or independent contractor of the insured or any additional insured or employee of any independent **contractor**". (Exhibit 1, page 18); (emphasis added)

The term "independent operator" appears in the Insurance Policy once, only in the Exclusion in paragraph (e)(1)(A), which is one of the three categories of activities an injury must arise out of for the Exclusion to apply, in this case, "Employment by the insured or any additional insured or **independent operator**". (emphasis added); (Exhibit 1, page 18)

Further, as discussed above, the Defendant failed to disclaim notice to its insured, Chicketa Watson, who is also the Plaintiff's judgment debtor under the Judgment.

"[A]n insurance company that disclaims in a situation where coverage may be arguable is well advised to seek a declaratory judgment concerning the duty to defend or indemnify the purported insured. If it disclaims and declines to defend in the underlying lawsuit without doing so, it takes the risk that the injured party will obtain a judgment against the purported insured and then seek payment pursuant to Insurance Law § 3420. Under those circumstances, having chosen not to participate in the underlying lawsuit, the insurance carrier may litigate only the validity of its disclaimer and cannot challenge the liability or damages determination underlying the judgment." (Lang, 3 NY3d at 356)

Thus, the Defendant has waived its argument vis a vis the Exclusion to the extent that it claims that the Plaintiff was the employee of an "Independent Contractor", as opposed to an "Independent Operator", as the Defendant failed to disclaim coverage on that ground, and further, Defendant failed to disclaim coverage to Chicketa Watson and waived such disclaimer entirely.

Therefore, the Defendant's motion for summary judgment must be denied.

C.  **THE DEFENDANT'S RELIANCE UPON THREE CASES IS MISPLACED**

The Defendant's reliance upon Century Sur. Co. v. Franchise Contractors, LLC, (14 Civ 277 [SDNY March 10, 2016]) is misplaced. The exclusion that the Century Sur. Co. Court reviewed, applied to the facts of that case, by providing that the insurance did not apply to "'Bodily injury' to: (1) Any independent contractor or the 'employee' of any independent contractor while such independent contractor or their 'employee' is working on behalf of any insured".

The injured party in the personal injury case underlying Century Sur. Co. was an employee of the insured-subcontractor, which had been hired by the defendant-general contractor, which in turn was hired by the land lessee and/or the land owner, all of whom were additional insureds under the employer-contractor's insurance policy, which are simply not the facts of this matter.

The Defendant's reliance on James River Insurance Company v. Keyes2Safety, Inc., (No. 11 C 901 [NDIL Jul. 24, 2012]) is likewise misplaced.

The injured party in the underlying lawsuit in the Keyes2Safety, Inc. action was an employee of DBM Cotton Services, which was a subcontractor of the drywall subcontractor, which in turn was a subcontractor of defendants the McClier Corporation, Keyes2Safety, Inc. (the insured) and Daniel Mustapha, all of whom were in direct privity with the insured, and all of whom had a direct line of contracts to the subcontractor-employer of the injured employee. (*see*, Rule 56.1(a)(3) statement of undisputed material facts, James River Insurance Company v. Keyes2Safety, Inc., No. 11 C 901, [NDIL] docket #29, ¶¶9-11)

In the third case relied upon by Defendant, Wellington Specialty Insurance Co. v. Ling, (3:08-CV-738-L [N.D. Tex. Jul. 17, 2009]), the District Court denied the insurer's motion for summary judgment on the basis of there being an issue of fact.

The injured party alleged that he was an independent contractor of Jose Luis Garcia d/b/a J.J. Framing, who in turn, was an independent contractor of the insured James Ling d/b/a Ranger Enterprises. The Court determined that the identical exclusion to our Exclusion did not apply because by its terms, it did not exclude independent contractors of independent contractors.

Any other analysis of coverage under the policy therein is *ober dictum*, as it was not essential to the decision and does not establish precedent. Further, as it relates to our analysis, it does not appear that any party in Ling argued, as the facts were inapposite, that either privity or some direct line of contractual obligations was required, as it would not have been relevant.

Because there is no direct line of contracts or any privity between the Insureds and the Plaintiff, the Exclusion does not apply to the Plaintiff, and Defendant's motion should be denied, and the Plaintiff's cross-motion granted in their respective entireties.

D. **THE DEFENDANT'S PROPOSED INTERPRETATION IS UNREASONABLE**

The Defendant argues that the Exclusion "applies if the injured worker was injured in the course of employment with an 'independent contractor,' whether hired by or otherwise connected to the insured" and that the injured "'employee of any independent contractor' need not have any connection to the insured."

The Defendant's proposed interpretation is unreasonable because it violates several of the canons of contract interpretation.

First, the Insurance Policy "must be read as a whole in order to determine its purpose and intent". In addition, the same words used in different parts of a writing have the same meaning. (Finest Investments v. Security Trust Co. of Rochester, 96 AD2d 227, 230 [4th Dept. 1983], *affm*., 61 NY2d 897 [1984])

The Defendant wholly ignores and renders inconsistent the use of "independent contractor" as it appears in the "Special Conditions – Subcontractors" endorsement. (Exhibit 1, page 19)

Specifically, such endorsement requires the Insureds to "obtain Certificates of Insurance with Limits of Insurance equal to or greater than those provided by this Policy from all subcontractors or independent contractors prior to commencement of any work performed."

Defendant's interpretation of "Independent Contractor", requires the Court to find that such words "do[] not qualify as the insured's employee because operating sufficiently independently of the insured's control" [sic] and "not have any connection to the insured".

The Defendant's interpretation of "Independent Contractor" then, when applied to the same words in the "Special Conditions – Subcontractors" endorsement, requires that the Insureds obtain certificates of insurance from those over whom they have no control, nor "any connection" to – an impossibility – unless the parties to the Insurance Policy intended that the Insureds, both prior to

and following their material delivery stand at each project site and demand (and somehow obtain) insurance certificates from every person who enters the project site, including every potential contractor who they cannot compel to provide such certificates because they lack any relationship.

This would clearly be an overly absurd result.

Further, the Defendant conflates the terms "independent contractor" with "independent operator", when it states that Defendant's interpretation "finds further support in the next section, which dictates that the injury be sustained in the course of either: (1) employment by the insured or independent operator (necessarily meaning the "independent contractor" referenced above)".

Both of these terms appear in the Exclusion, and the Defendant's attempt to conflate the two terms is unreasonable because it violates the rule that the same words used in different parts of a writing have the same meaning. (Security Trust Co. of Rochester, 96 AD2d at 230)

Moreover, if the intent of the parties to the Insurance Policy was to use the broader term "independent operator", they would have done so, and it is unreasonable to rewrite the Exclusion to broaden it in the Defendant's favor, as such ambiguity must be construed against the insurer.

Similarly, Defendant interprets "any", to have the same meaning as "all", however, that is not one of the many definitions of "any", cited above, and "all" was not used in the Exclusion.

Finally, Defendant's interpretation is unreasonable because it requires the wholesale rewriting of the Exclusion so that it pertains to an 1. employee, 2. Temporary worker, 3. leased employee, or 4. Independent contractor of the insured[,] or [5.] independent contractor of any additional insured or [6.] employee of ~~any~~[every or all] independent contractor[s] [of anyone regardless of whether they have a connection to any of the insureds]".

Therefore, Defendant's interpretation is unreasonable and should be rejected. If the Court finds the Defendant's interpretation reasonable, because the Plaintiff's interpretation is also

reasonable, Defendant's motion must be denied, Plaintiff's cross-motion must be granted, and

Plaintiff should be awarded summary judgment against Defendant.

**POINT VI**
**PLAINTIFF IS ENTITLED TO PRE-JUDGMENT INTEREST FROM**
**DEFENDANT, EVEN IN EXCESS OF THE INSURANCE POLICY LIMITS**

The two relevant provisions of the New York Civil Practice Law & Rules are CPLR 5001

and CPLR 5004 each which provide, in pertinent part:

> "5001. Interest to verdict, report or decision. (a) Actions in which recoverable. Interest shall be recovered upon a sum awarded because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property, except that in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion.
> ***
> 5004. Rate of interest. (a) Interest shall be at the rate of nine per centum per annum"

Plaintiff, who is otherwise not a party to the Insurance Policy, is suing the Defendant

pursuant to NY Insurance Law §3420(a)(2), which provides, in pertinent part, that:

> "(a) No policy or contract insuring against liability for injury to person … shall be issued or delivered in this state, unless it contains in substance the following provisions or provisions that are equally or more favorable to the insured and to judgment creditors so far as such provisions relate to judgment creditors:
> ***
> (2) A provision that in case judgment against the insured … in an action brought to recover damages for injury sustained or loss or damage occasioned during the life of the policy or contract shall remain unsatisfied at the expiration of thirty days from the serving of notice of entry of judgment upon the attorney for the insured, or upon the insured, and upon the insurer, then an action may…be maintained against the insurer under the terms of the policy or contract for the amount of such judgment not exceeding the amount of the applicable limit of coverage under such policy or contract."

The Judgement was issued against the Insureds for personal injuries sustained by the

Plaintiff during the policy period. (Exhibit 5)

Notice of entry of the Judgment was served upon the Insureds and the Defendant on June 30, 2023. (Exhibit A, ¶17), (Treybich Affm. ¶6); (Exhibit 5)[9]

Thirty-one days later, as of July 31, 2023[10], the Judgment remained unpaid, and it remains unpaid today. (Wiley Declaration, ¶11)

Thus, Plaintiff is suing Defendant pursuant to and under the terms of the Insurance Policy, by in effect, having been written into the Insurance Policy by New York law as an intended third-party beneficiary, and thus, pursuant to NY Insurance Law §3420(a)(2), Plaintiff is suing Defendant "under the terms of the policy or contract" for breach of the Insurance Policy.

"An insurance company must normally pay pre-judgment interest when it breaches an insurance contract." (Varda, Inc. v. Ins. Co. of North America, 45 F3d 634, 640 [2d Cir. 1995]; *see also*, U.S. Fire Ins. Co. v. Federal Ins. Co., 858 F2d 882, 887-889 [2d Cir. 1988] – awarding interest in the absence of contractual privity between coinsurers; Turner Construction Co. v. American Manufacturers Mut. Ins. Co., 485 F.Supp.2d 480, 490 [SDNY 2007] *aff'd*., 341 Fed. Appx. 684 [2d Cir. 2009] – "under New York law, the awarding of interest on breach of contract claims, including breach of third-party insurance policies, is non-discretionary")

This rule applies even in the absence of a valid claim of bad faith on the part of the insurer, and includes interest in excess of policy limits. (Samovar of Russia Jewelry Antique Corp. v. Generali, 102 AD2d 279, 281 [1st Dept. 1984]; *see also*, Pope v. New York Property Ins. Underwriting Assoc., 112 AD2d 984, 985 [2d Dept. 1985] *aff'd.* 66 NY2d 857 [1985])

---

[9] The first page of the Notice of Entry of the Judgment is stamped "Received July 5, 2023". (Exhibit 5)
[10] The thirtieth day, July 30, 2023, fell on a Sunday, and thus, pursuant to New York General Construction Law §§25 and 25-A, performance was due on the following day, a non-public-holiday Monday.

Thus, Plaintiff is entitled to recover the face value of the Insurance Policy, together with interest thereupon, from the thirtieth day following service of notice of entry of the judgment, or 9% per annum beginning on July 31, 2023, as well as the costs and disbursements of this action.

In the alternative, CPLR 5001(a) permits the Court to exercise its discretion in an action of an equitable nature, and to award interest, and to fix the date and the rate.

The Judgment against the Insureds, in the sum of One Million Four Hundred Thousand Dollars ($1,400,000.00), plus post-judgement interest[11] from entry of the Judgment on January 22, 2021, is in excess of the limits of the Insurance Policy of One Million Dollars ($1,000,000.00)[12]

If the Plaintiff prevails in this action, then the Court has necessarily determined that the Defendant owed a duty to defend and indemnify the Insureds – the Plaintiff's judgment debtors - thus, the Defendant breached the Insurance Policy when it disclaimed coverage on December 22, 2014. (Exhibit 3); (Olin Corp. v. OneBeacon America Ins. Co., 864 F.3d 130, 152 [2d Cir. 2017]; Aetna Cas. &Sur. Co. v. Home Ins. Co., 882 F. Supp. 1328, 1353 [SDNY 1995])

Defendant has received the benefit of the time value of the money which it owed to the Insureds-judgment-debtors of Plaintiff, for nearly a decade.

To do equity and effect the purpose of an award of interest, "to require a person who owes money to pay compensation for the advantage received from the use of that money over a period of time" (Manufacturer's & Traders Trust Co. v. Reliance Ins. Co., 8 NY3d 583, 589 [2007]), the Court should award the Plaintiff interest at the statutory rate of 9% per annum, use its discretion to fix the date from which to calculate such interest from December 22, 2014 – the date of the

---

[11] Pursuant to CPLR 5003 and 5004, the rate of interest is 9% per year and is calculated from the date the Judgment was entered, as of November 16, 2024 – the day of calculation, the Judgment amount, with post-judgment interest, stands at One Million Eight Hundred Eighty One Thousand Five Hundred Sixty Seven Dollars and Ninety Five Cents ($1,400,000.00x9%/365 days = approx. $345.21/day x 1,395 days = $481,567.95 + $1,400,000.00= $1,881,567.95)
[12] As per the declaration to the Insurance Policy, the policy limits are one million dollars ($1,000,000.00) per occurrence. (Exhibit 1, page 13)

Defendant's breach to the Plaintiff's judgment debtors, resulting in interest owed by the Defendant as of November 16, 2024 of Eight Hundred Ninety Two Thousand One Hundred Twenty Six Dollars and Forty Four Cents ($1,000,000.00x9%/365days = approx. $246.58/day x 3,618 days = $892,126.44), thus, Plaintiff would be entitled to a judgment against Defendant in the sum of One Million Dollars ($1,000,000.00) plus the statutory rate of interest from December 22, 2014, or Eight Hundred Ninety Two Thousand One Hundred Twenty Six Dollars and Forty Four Cents ($892,126.44) as of November 16, 2024, as well as the costs and disbursements of this action.

## CONCLUSION

In light of the foregoing, Plaintiff respectfully requests that the Court deny Defendant's motion for summary judgment, grant Plaintiff's cross-motion for summary judgment; award the statutory rate of interest from either December 22, 2014 or July 31, 2023, as the Court may decide, together with the costs and disbursements of this action, along with such other and further relief as this Court deems just and proper.

Dated: Poughkeepsie, New York
      November 19, 2024

By:            Respectfully submitted,
           TREYBICH LAW, P.C.

           Michael Treybich, Esq.
           Attorneys for Plaintiff
           272 Mill Street
           Poughkeepsie, NY 12601
           (845) 554-5295