**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

NICHOLAS WILEY,

                              Plaintiff,               1:24-cv-72
                                                            (ECC/ML)

v.

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY,

                              Defendant.

_____

Michael Treybich, Esq., _for Plaintiff_
Max W. Gershweir, Esq., _for Defendant_

**Hon. Elizabeth C. Coombe, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

**I.     INTRODUCTION**

      Plaintiff Nicholas Wiley (Plaintiff) filed this action pursuant to New York Insurance Law § 3420 in New York State Supreme Court, Ulster County, on November 14, 2023.  Complaint, Dkt. No. 2.  Plaintiff seeks to recover damages pursuant to a default judgment granted in an underlying state court action against insureds of Defendant Mesa Underwriters Specialty Insurance Company (Mesa).  _Id._  Mesa removed the action on January 16, 2024, invoking federal diversity jurisdiction.  Dkt. No. 1.  Presently before the Court are the parties' motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Dkt. Nos. 35, 36.  For the following reasons, the Court denies Mesa's motion for summary judgment and grants in part Plaintiff's cross-motion for summary judgment.

II.    **FACTS[1]**

   A.    **Background**

Libolt & Sons, Inc. (Libolt) was hired to serve as general contractor of a construction project to erect multi-family buildings in Woodstock, New York. JSF ¶ 5. Libolt hired DJ Heating & Cooling (the HVAC Subcontractor), Plaintiff's employer, to perform HVAC work on the project. *Id.* ¶ 6. Libolt also hired Rocker II Drywall Services, LLC (the Sheetrock Subcontractor), to install sheetrock. *Id.* ¶ 7. The Sheetrock Subcontractor purchased its sheetrock material from Marjam Supply Co., Inc. (the Supplier), who in turn hired Jumpstart Reality LLC to provide laborers to offload the Supplier's truck and distribute the sheetrock at the project site. *Id.* ¶¶ 8, 9. At all relevant times, Jumpstart Reality LLC (the Insured) was insured by Mesa under policy number MP0006001008894 (the Policy). *Id.* ¶¶ 2, 3.

On July 30, 2012, Plaintiff was allegedly injured at the project site, while in the course of employment with the HVAC Subcontractor, when sheetrock placed by the Insured's personnel fell on Plaintiff (the Accident). JSF ¶ 10. Plaintiff filed suit in state court to recover damages for the injuries he allegedly sustained as a result of the Accident against, among others, the Insured and its principal, Chicketa Watson (the Underlying Action). *Id.* ¶ 11. Mesa was first notified of the Accident and Underlying Action on December 5, 2014, when it received the complaint from an insurance agency that worked with the Insured. *Id.* ¶ 12. Mesa disclaimed coverage to the Insured and all other parties to the Underlying Action on December 22, 2014. *Id.* ¶ 13.

---

[1] The following facts are largely undisputed, and drawn primarily from the parties' joint stipulation of Facts (JSF). Dkt. Nos. 35-1, 36-4. The remaining facts are drawn from the parties' statements of undisputed material facts and responses, Dkt. Nos. 35-7 (Def. SUMF), 36-1 (Pl. SUMF), to the extent those facts are well-supported by citations to the record, as well as the attached exhibits.

The Insured and Watson failed to appear in the Underlying Action, and default judgment was entered against them. JSF ¶ 14. On January 26, 2017, the state court granted the appearing defendants summary judgment in the Underlying Action, dismissing the complaint against them. *Id.* ¶ 15. Plaintiff was awarded a judgment of $1,400,000 against the Insured and Watson on January 6, 2021 (the Judgment). *Id.* ¶ 16. Notice of entry of the Judgment was served on Mesa and the Insured by first class mail on June 30, 2023. *Id.* ¶ 17. Plaintiff filed this action on November 14, 2023, to recover the Judgment against Mesa. *Id.* ¶ 18.

### B.    The Policy

Mesa issued the Policy to the Insured with effective dates of December 7, 2011 to December 7, 2012. Def. SUMF ¶ 1; Pl. SUMF at 1. The Policy has a $1,000,000 per occurrence limit. Def. SUMF ¶ 4; Pl. SUMF at 1.

The Policy's "Limited Coverage for Contractors and Employees (General Liability)" Endorsement (LCCE Exclusion) states in relevant part:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

A.    SECTION 1 – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE, 2. Exclusions, e is deleted and replaced as follows:

This Insurance does not apply to:

e. Employer's Liability

"Bodily Injury" to:

   (1) An "employee", "temporary worker", "leased employee", or independent contractor of the insured or any additional insured or employee of any independent contractor arising out of and in the course of:

      (A) Employment by the insured or any additional insured or independent operator

(B) Performing duties related to the conduct of the insured or any additional insured's business; or

(C) Arising out of the injured party's employment; or

(2) A fellow "employee", "temporary worker", "leased employee", or independent contractor of the insured or any additional insured arising out of the course of such employment when the insured is an "executive officer of such employer; or

(3) The spouse, children, parent, brother or sister of that fellow "employee", "temporary worker", "leased employee", or independent contractor as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether an insured may be liable as an employer or in any other capacity; . . .

Def. SUMF ¶ 6; Pl. SUMF at 1; *see also* Dkt. Nos. 35-2 at 18; 36-5 at 18.

## III.    STANDARD OF REVIEW

Under Rule 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013)

(explaining that summary judgment is appropriate where the nonmoving party fails to "'come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor' an essential element of a claim" (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010))).

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323-24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (quoting *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore, "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).

When considering cross-motions for summary judgment, a court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Hotel Emp. & Rest. Emp. Union, Local 100 of New York, N.Y. & Vicinity v. City of New York Dep't of Parks & Recreation*, 311 F.3d 534,

543 (2d Cir. 2002) (quoting *Heublein v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993) (internal

quotation marks omitted)).

## IV.    DISCUSSION

The parties agree that New York law applies to the underlying claim. Defendant's

Memorandum of Law (Def. MOL) at 10, Dkt. No. 35-9; Plaintiff's Memorandum of Law (Pl.

MOL) at 9, Dkt. No. 36-10.  Their core dispute is whether Mesa has a duty to indemnify the Insured

for the Judgment under the terms of the Policy.  Mesa argues that it has no duty to indemnify the

Insured because, given the undisputed facts underlying the Judgment, i.e. that Plaintiff was injured

in the course of employment with an independent contractor, the LCCE Exclusion bars coverage.

Def. MOL at 10.  Plaintiff argues that the LCCE Exclusion is ambiguous, and that such ambiguity

must be resolved in the Plaintiff's favor.  Pl. MOL at 11.  Plaintiff further argues that even if the

Insurance Policy does not provide coverage the Insured, Mesa has a separate obligation to insure

Watson.  *Id.* at 19-21.  Finally, Plaintiff asserts that Mesa waived reliance on the LCCE Exclusion.

*Id.* at 21, 22-24.

"The construction of an insurance contract is ordinarily a matter of law to be determined

by the court." *Sunrise One, LLC v. Harleysville Ins. Co. of N.Y.*, 293 F. Supp. 3d 317, 325

(E.D.N.Y. 2018).  Under New York law, words and phrases in a contract should be given their

plain meaning, and "the contract should be construed so as to give full meaning and effect to all

of its provisions." *LaSalle Bank Nat'l Ass'n v. Nomura Asset Cap. Corp.*, 424 F.3d 195, 206 (2d

Cir. 2005).  Contract terms are ambiguous if they are "capable of more than one meaning when

viewed objectively by a reasonably intelligent person who has examined the context of the entire

integrated agreement and who is cognizant of the customs, practices, usages and terminology as

generally understood in the particular trade or business." *Olin Corp. v. Am. Home Assurance Co.*,

704 F.3d 89, 99 (2d Cir. 2012) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d

1182, 1191 (2d Cir. 1996)). Ambiguity, where found, must be resolved in favor of the insured. *Loomis v. ACE Am. Ins. Co.*, 517 F. Supp. 3d 95, 114 (N.D.N.Y. 2021) (quoting *In re Viking Pump, Inc.*, 27 N.Y.3d 244, 257-58 (2016)). "[A] contract is not ambiguous if the language it uses has a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion." *Id.* (quoting *In re Viking Pump, Inc.*, 27 N.Y.3d at 258).

"[W]hen an exclusion clause is relied upon to deny coverage, the burden rests upon the insurance company to demonstrate that the allegations of the complaint can be interpreted only to exclude coverage." *Bullseye Rest., Inc. v. James River Ins. Co.*, 387 F. Supp. 3d 273, 280 (E.D.N.Y. 2019) (quoting inter alia *Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435 (2002)). "Policy exclusions are to be strictly and narrowly construed and are not to be extended by interpretation or implication." *Id.* (citing *East Ramapo Cent. Sch. Dist. v. New York Schools Ins. Reciprocal*, 150 A.D.3d 683, 686 (2nd Dep't 2017)).

Mesa argues that the LCCE Exclusion precludes coverage where, as here, an individual is injured in the course of employment with any independent contractor, regardless of whether that independent contractor was hired or otherwise performing work for the Insured. Def. MOL at 9-13. This interpretation distinguishes the phrase "independent contractor of the insured or any additional insured" from "employee of any independent contractor." In contrast, Plaintiff argues that the LCCE Exclusion applies to four different categories: an (1) "employee," (2) "temporary worker," (3) "leased employee," or (4) independent contractor of the insured or any additional insured or employee of any independent contractor. Pl. MOL at 15-17. According to Plaintiff, the term "any independent contractor" is qualified by the category of independent contractors

identified in the same clause, that is, an independent contractor "of the insured or any additional insured." *Id.*

The Court agrees that the LCCE Exclusion is reasonably susceptible to multiple interpretations when applied to the facts of this case. In addition, Plaintiff's interpretation appears to be the more reasonable of the two, when read in context. For example, the placement of a comma after "employee," "temporary worker," and "leased employee" suggests a distinction among these terms. Dkt. No. 35-2 at 18. In contrast, the absence of a comma in the subsequent clause—"independent contractor of the insured or any additional insured or employee of any independent contractor"—suggests a connection among the words in that clause. Moreover, the terms "employee," "temporary worker," and "leased employee" are defined in the Insurance Policy and each involve a relationship with "you," i.e. the Insured. Dkt. No. 35-2 at 36-37. Although "independent contractor" is not defined in the Insurance Policy, it is reasonable to interpret that term in the context of the definitions of the terms "employee," "temporary worker," and "leased employee," and all of those definitions include a relationship with the Insured. Moreover, Defendant's interpretation makes the phrase "of the insured" redundant as to the terms "employee," "temporary worker," and "leased employee," because those terms are already, by definition, associated with the Insured.

Moreover, Mesa's position—that the unambiguous terms of the LCCE Exclusion preclude coverage for *any* independent contractor regardless of its relationship to the Insured—is at odds with both New York state and Second Circuit caselaw. "The Second Circuit has found [the terms contractor and subcontractor] to be ambiguous when left undefined" in an endorsement in a similar commercial general liability policy. *U.S. Underwriters Ins. Co. v. Kenfa Madison, LLC*, No. 20-cv-2761, 2023 WL 5613299, at *7 (E.D.N.Y. Aug. 30, 2023) (citing *U.S. Underwriters Ins. Co. v.*

*101-19 37th Ave., LLC*, 642 F. App'x 10, 11 (2d Cir. 2016)); *see also United States Liab. Ins. Co. v. WW Trading Co.*, 813 F. App'x 636, 640 (2d Cir. 2020) (finding the term "contractor" ambiguous when undefined in a similar policy).  Courts in this Circuit, as well as in New York state court, have resolved this ambiguity in favor of insureds, reading similar exclusions to refer to "contractors" or "subcontractors" who are in privity with the insured.  *WW Trading Co.*, 813 F. App'x at 640; *see also Merchants. Mut. Ins. Co. v. Rutgers Cas. Ins. Co.*, 922 N.Y.S.2d 200, 201-02 (2d Dep't 2011) (reading a similar exclusion not to preclude coverage of injury to employee of subcontractor working independently at the same job site); *Netherlands Ins. Co. v. U.S. Underwriters Ins. Co.*, No. 14 Civ. 3568, 2015 WL 9295745, at *5 (S.D.N.Y. Dec. 17, 2015) (adopting and applying *Merchants* interpretation requiring privity with the insured).

This is consistent with decisions of other Circuit courts.  *Northland Cas. Co. v. Mulroy*, 789 F. App'x 60, 61 (9th Cir. 2019) ("We agree with Defendants that the term 'subcontractor'—undefined by the insurance policy—is ambiguous in the abstract."); *U.S. Liab. Ins. Co. v. Benchmark Const. Servs., Inc.*, 797 F.3d 116, 124 (1st Cir. 2015) ("We are persuaded that reasonably intelligent people may differ about the meaning of the word 'contractor,' and hence the word is ambiguous.").  The First Circuit in *Benchmark* looked "to the reasonable expectations of the insured to discern the proper meaning of the undefined term," i.e. that "'contractor' means someone with a contract *with the insured*." 797 F.3d at 123-24.  In doing so, the court recognized the unlikeness that the parties would have "contracted for coverage to depend on the coincidence of an injured party's contractual obligations in the world at large." *Id.* at 124.

This conclusion is also supported by the purpose of commercial general liability insurance, and the Insured's reasonable expectations of coverage under the Policy.  "Commercial general liability policies are designed to protect the insured against losses to third parties arising out of the

operation of the insured's business." 9A Couch on Ins. § 129:2 (3d ed. 2024). General liability coverage is not necessary, however, for an employer whose employee is injured in the course of his employment, because such losses are generally covered by the worker's compensation system. It is therefore reasonable to expect that a general liability policy, like the one here, would exclude losses that would generally be covered by worker's compensation insurance. In addition, an insured that hires an independent contractor can ensure that the independent contractor has adequate insurance coverage because of their contractual relationship.

Here, the standard employer's liability exclusion from the Insurance Policy, Dkt. No. 35-2 at 26, was replaced with a modified form, the LCCE Exclusion, *id.* at 18. The LCCE Exclusion expands coverage limitations for losses sustained by individuals who have some form of relationship with the Insured beyond the traditional employee-employer relationship. Dkt. No. 35-2 at 18. Read in its entirety, the underlying objective of the LCCE Exclusion—which retains the heading "Employer's Liability"—is to exclude coverage to individuals who work directly or indirectly for the Insured. It would therefore be reasonable for the Insured to interpret the phrase "any independent contractor" as consistent with the objective of the LCCE Exclusion and to refer to independent contractors of the Insured. *See Benchmark Const. Services, Inc.*, 797 F.3d at 124 ("Since the word 'contractor' is being used in a provision we have described as an employer's liability exclusion, it makes sense to define 'contractor' as someone with a contract with the insured. A reasonable insured would expect the contractual relationship between the insured and the injured party to govern the applicability of an employer's liability exclusion to a given injury.").

Because there is more than one reasonable interpretation of the LCCE Exclusion, and considering that the terms of the LCCE Exclusion are ambiguous as to whether the term "employee

of any independent contractor" assumes a privity component, the LCCE Exclusion must be construed in favor of the Insured. Mesa does not otherwise dispute that Plaintiff has met the elements of a proper N.Y. Ins. Law. § 3420 action, and asserts no further opposition to Plaintiff's cross-motion for summary judgment, other than the LCCE Exclusion.[2] Mesa's motion for summary judgment is therefore denied, and Plaintiff's cross-motion for summary judgment is granted to the extent set forth below.

V.   **CONCLUSION**

For these reasons, it is

**ORDERED,** that Mesa's motion for summary judgment, Dkt. No. 35, is **DENIED**, and it is further

**ORDERED,** that Plaintiff's cross-motion for summary judgment, Dkt. No. 36, is **GRANTED** in that Mesa must indemnify Plaintiff for the Judgment to the extent of available coverage in the Insurance Policy, and it is further

---

[2] Mesa did not oppose or otherwise respond to Plaintiff's argument that he is entitled to prejudgement interest in excess of the Insurance Policy limits pursuant to New York C.P.L.R. §§ 5001, 5004. Pl. MOL at 28-31. Although Plaintiff provides some New York state caselaw arguably supporting his position, more recent state and Circuit caselaw suggests that awarding prejudgment interest in excess of the policy limits may not be appropriate. *See Ashkenazy v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 245 A.D.2d 326, 327 (2nd Dep't 1997) ("Absent a contractual provision to the contrary, a liability insurance carrier is not liable for prejudgment interest in excess of the limits of the policy") (citation omitted); *Gov't Emps. Ins. Co. v. Saco*, No. 12-cv-5633, 2017 WL 1214433, at *4 (E.D.N.Y. Mar. 31, 2017) (reaffirming prior decision "that insurers in New York are not bound by law to pay prejudgment interest in excess of policy limits.").

**ORDERED,** that Mesa is directed to pay Plaintiff that portion of the Judgement within the limits of the Insurance Policy, $1,000,000, together with the costs and disbursements of this action, and it is further

**ORDERED,** that within twenty (20) days of the date of this Memorandum-Decision and Order, the parties submit supplemental briefing as to what extent, if any, Mesa is obligated to pay prejudgment interest in excess of its policy limits pursuant to New York law and/or the terms of the Insurance Policy.

**IT IS SO ORDERED.**

Dated: June 9, 2025

Elizabeth C. Coombe
U.S. District Judge