**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

NICHOLAS WILEY,

|                        |              |                  |
|------------------------|--------------|------------------|
|                        | Plaintiff,   | 1:24-cv-72       |
|                        |              | (ECC/ML)         |

v.

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY,

                                  Defendant.

---

Michael Treybich, Esq., *for Plaintiff*
Max W. Gershweir, Esq., *for Defendant*

**Hon. Elizabeth C. Coombe, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Plaintiff Nicholas Wiley filed this action pursuant to New York Insurance Law § 3420 in New York State Supreme Court, Ulster County, on November 14, 2023.  Dkt. No. 2.  Plaintiff seeks to recover damages pursuant to a default judgment granted in an underlying state court action against insureds of Defendant Mesa Underwriters Specialty Insurance Company (Mesa).  *Id*.  Mesa removed this action on January 16, 2024, invoking federal diversity jurisdiction.  Dkt. No. 1.

On October 29, 2024, Mesa moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Dkt. No. 35.  Plaintiff filed a cross-motion for summary judgment on November 19, 2024.  Dkt. No. 36.  By decision and order dated June 9, 2025, the Court denied Mesa's motion for summary judgment and granted in part Plaintiff's cross-motion for summary judgment – leaving undecided the issue of pre-judgment interest, to be determined upon further briefing by the parties.  Dkt. No. 41.

Presently before the Court is Mesa's motion for reconsideration, Dkt. No. 42, which is opposed by Plaintiff, Dkt. No. 46. Also before the Court are the parties' supplemental briefs concerning to what extent, if any, Mesa is obligated to pay pre-judgment interest in excess of its policy limits pursuant to New York law and/or the terms of the Insurance Policy. For the reasons that follow, Mesa's motion for reconsideration is denied, and Plaintiff's motion to be awarded pre-judgment interest is granted in part.

## II.    BACKGROUND

The Court assumes familiarity with the procedural and factual background of this case, as set forth in its June 9, 2025 decision and order. Dkt. No. 41 at 1-4.

## III.    MOTION FOR RECONSIDERATION

### A.    Standard of Review

The Court had not entered final judgment at the time Mesa filed a motion for reconsideration, and issues surrounding Plaintiff's entitlement to pre-judgment interest remain pending. Accordingly, Mesa's request for reconsideration is authorized under Federal Rule of Civil Procedure 54(b), which permits federal district courts to reconsider "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *see also see also Harris v. Millington,* 613 F. App'x 56, 58 (2d Cir. 2015) (finding that Rule 60(b) was inapplicable following a grant of summary judgment because a "counterclaim remained pending, and the court did not direct entry of a final judgment").

Local Rule 60.1 provides that a party may file such a motion for reconsideration within fourteen days from the date a judgment, order, or decree is entered. N.D.N.Y. L.R. 60.1. As a general matter, "reconsideration is warranted where the moving party can show the court

2

'overlooked' facts or controlling law that 'might reasonably be expected to alter the conclusion reached by the court.'" *Zhang v. Ichiban Grp., LLC*, No. 17-cv-00148, 2022 WL 813956, at *1 (N.D.N.Y. Mar. 17, 2022) (quoting *Hum. Elecs., Inc. v. Emerson Radio Corp.*, 375 F. Supp. 2d 102, 114 (N.D.N.Y. 2004)); *see also Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "The standards governing motions for reconsideration are necessarily strict to prevent litigants from rehashing the same issues that have already been carefully considered by the district court in the prior ruling." *Graber v. Cayuga Home for Child.*, No. 5:24-cv-468, 2025 WL 330492, at *1 (N.D.N.Y. Jan. 29, 2025) (citing *Navigators Ins. Co. v. Goyard, Inc.*, 623 F. Supp. 3d 220, 222 (S.D.N.Y. 2022)); *see also Analytical Survs. Inc. v. Tonga Partners L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) ("[S]uch a motion 'is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple[.]'").

"In this district, there are only three circumstances under which a court will grant a motion for reconsideration: '(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) a need to correct a clear error of law or prevent manifest injustice.'" *Wright v. Martin, Harding & Mazzotti, LLP*, No. 1:22-cv-515 (MAD/ML), 2024 WL 2399906, at *2 (N.D.N.Y. May 23, 2024) (citing *Lewis v. Martinez*, No. 9:15-cv-55, 2019 WL 2105562, *1 (N.D.N.Y. May 14, 2019)).

**B.    Discussion**

Mesa argues that the Court's summary judgment determination was based on clear errors of law. Specifically, Mesa contends that the court erred in (1) overlooking caselaw confirming that a missing serial or Oxford comma is irrelevant to interpreting contractual language, (2) stating that the policy defines the terms "employee" and "temporary worker" to require a relationship with the insured, (3) finding that Mesa's position makes the phrase "of the insured" redundant, (4) ignoring the significance of the term "additional insured" as used in the exclusion, and (5) finding

3

that Mesa's position "is at odds with both New York state and Second Circuit caselaw."  Dkt. No. 42-1.

Mesa has failed to present a compelling reason warranting reconsideration.  As the Court found in its Memorandum-Decision and Order, the LCCE Exclusion is reasonably susceptible to multiple interpretations and ambiguous as to, among other things, whether the term "employee of any independent contractor" assumes a privity component.  Mesa's first contention, that the Court improperly relied on the omission of the "hotly debated serial or Oxford comma," is unpersuasive. The caselaw Mesa relies on substantiates the Court's opinion that the LCCE Exclusion can reasonably be read more than one way, and does not compel a specific interpretation or identify any clear error on the part of the Court.  *See, e.g., In re Enron Creditors Recovery Corp.*, 380 B.R. 307, 323 (S.D.N.Y. 2008) ("the fact that the propriety of placing a comma at that point is hotly disputed means one cannot read anything at all into its absence—*at least not without knowing where the draftsman learned his or her comma-lore*") (emphasis added); *Corder v. Ohio Edison Co.*, 162 Ohio St.3d 639, 648 (Ohio 2020) (stating that comma's omission "*may* tell us nothing more than the drafter's stance on the Oxford-comma debate") (emphasis added).

Mesa has also failed to identify any clear error in the Court's determination that the undefined term "independent contractor" is itself ambiguous and subject to multiple interpretations as utilized in the Insurance Policy.  As an initial matter, other sections of Insurance Policy are consistent with interpreting the phrase "independent contractor" as requiring a relationship with the Insured.  For example, the "Special Conditions – Subcontractors" endorsement to the Insurance Policy states: "You will obtain Certificates of Insurance . . . from all subcontractors or independent contractors prior to the commencement of any work performed."  Dkt. No. 35-2 at 19.  Although this clause does not contain language specifically tethering the proposed subcontractors or

independent contractors to the Insured, it would not be reasonable to interpret this endorsement to require the Insured to obtain Certificates of Insurance from *any* subcontractor or independent contractor. It is hard to imagine how that would work in this instance, where the Insured is a material delivery company hired for a limited purpose of delivering sheetrock to a project site where multiple companies are engaged in work with which the Insured has no involvement or relationship. At base, the use of the term "independent contractor" in other provisions of the Insurance Policy does not compel a specific interpretation, much less the interpretation pressed by Mesa, and thus does not alleviate any ambiguity as to the term.

Admittedly, neither the Court nor Mesa has found any caselaw assessing the application of an exclusion identical to the LCCE Exclusion. There is, however, a significant collection of caselaw analyzing a different, but similar, exclusion, known as the L-500 Exclusion. As Mesa points out, the L-500 Exclusion is distinct from the LCCE Exclusion to the extent it includes the phrase "for which any insured may become liable in any capacity." Mesa argues that coverage was awarded in the cases relied on by the Court not based on the failure to define the purportedly ambiguous terms "contractor" or "subcontractor," but on the ambiguity surrounding the aforementioned language tethering the insured's potential liability to the underlying injury in some way.

Mesa correctly asserts that the LCCE Exclusion does not include such language. However, the omission of such language does not remedy the ongoing ambiguity surrounding the term "independent contractor," as utilized in the subject Insurance Policy. If nothing else, the caselaw discussing the L-500 Exclusion and other similar, but more expansive exclusions, reveals courts'

ongoing frustration with determining the scope of similar, undefined terms.[1]  To the extent the LCCE Exclusion contains the same undefined terms, and lacks any additional language suggesting an implied privity with the insured, or lack thereof, it is no less susceptible to more than one meaning.

Mesa contends otherwise, pointing to the state-court decision rendered in *Essex Insurance Co. v. Mondone,* 106 A.D.3d 1045 (2d Dep't 2013).  For several reasons, the Court declines to find that *Essex* compels a finding in Mesa's favor in this action.  *Essex* appears to exist as an outlier among cases grappling with the general, undefined use of the term "contractor" in insurance policy exclusions.  Although there is no caselaw in direct contradiction to the *Essex* decision, it has also yet to be relied on to directly support a similar finding of unambiguity.  In any event, the Court finds *Essex* to be distinguishable from this action.  In *Essex,* the Second Department summarily

---

[1] *See U.S. Underwriters Ins. Co. v. 101-19 37th Ave. LLC*, 642 F. App'x 10, 11 (2d Cir. 2016) ("The exclusion at issue here barred coverage for any injury "arising out of or in the course of the rendering or performing services of any kind or nature whatsoever by" a "contractor, subcontractor or 'employee', 'volunteer worker', 'temporary worker' or 'casual laborer' of such contractor or subcontractor." . . . . The words "contractor" and "subcontractor" are not defined in the policy at issue. As a result, we are unable to determine whether Feldman Lumber, the employer of the injured party, is a "contractor" or "subcontractor" within the meaning of the exclusion.); *U.S. Underwriters Ins. Co. v. Kenfa Madison, LLC*, No. 20-cv-2761, 2023 WL 5613299, at *7 (E.D.N.Y. Aug. 30, 2023) ("Kenfa is correct that the Policy does not define the terms "contractor" or "subcontractor." . . . . The Second Circuit has found these terms to be ambiguous when left undefined . . . ."); *Northland Cas. Co. v. Mulroy*, 789 F. App'x 60, 61 (9th Cir. 2019) ("An insurance contract is ambiguous if it is reasonably subject to two different interpretations . . . . We agree with Defendants that the term "subcontractor"—undefined by the insurance policy—is ambiguous in the abstract.") (internal citation omitted); *U.S. Liab. Ins. Co. v. Benchmark Const. Servs., Inc.*, 797 F.3d 116, 124 (1st Cir. 2015) ("We are persuaded that reasonably intelligent people may differ about the meaning of the word "contractor," and hence the word is ambiguous . . . 'Anyone with a contract' is surely a reasonable definition of the word "contractor,". . . but so is a more narrow definition focused on the contractual relationship of the injured party and the insured.").

concluded that the applicable exclusion[2] "unambiguously excludes coverage for the subject claim." Here, however, the exclusion at issue falls under the heading "Employer's Liability," and other provisions of the Insurance Policy may be reasonably interpreted to use the term "independent contractor" in reference to those in privity with the insured. *Essex* does not provide any context for its conclusion, nor grapple with any of the similar factors presented in this action, and thus does not compel a finding that the LCCE Exclusion applies to exclude coverage here.

Furthermore, subsections (A)-(C) do not compel a finding that the LCCE Exclusion can only be interpreted to unambiguously exclude coverage. Subsection (A) refers to an "independent operator," a term that Mesa suggests means "independent contractor," but is neither a defined term nor referenced anywhere else within the LCCE Exclusion. Furthermore, subsection (C) does not conform to the language preceding it.[3] Upon inspection, subsections (A)-(C) serve to clarify the genesis of the "bodily injury" for which coverage will be excluded, not the individual to whom coverage does not apply. Thus, the Court does not agree that the language found in subsections (A)-(C) clarifies any ambiguity contained in the LCCE Exclusion such that a reasonably intelligent person could only construe the exclusion to apply to Plaintiff.

Last, Mesa's argument that the Court erred in its assessment of the defined terms in the LCCE Exclusion does not reveal an error in the Court's ultimate conclusion that the LCCE Exclusion is capable of more than one meaning. Mesa contends that it is not reasonable to interpret

---

[2] The endorsement provided, in pertinent part, that "[t]his insurance does not apply to . . . damages . . . arising out of, caused or contributed to by . . . any injury sustained by any contractor, self-employed contractor, and/or subcontractor, or any employee, leased worker, temporary worker or volunteer help of same." *Essex Ins. Co.* at 1046–47.

[3] Read in its entirety, section (e)(1)(C) as interpreted by Mesa sets out in relevant part that "This insurance does not apply to "Bodily Injury" to an employee of any independent contractor arising out of and in the course of *arising out of the injured party's employment.* Dkt. No. 35-2 at 18.

the defined terms "employee" or "temporary worker" to imply a relationship with the Insured.[4]

However, accepting Mesa's expansive definition of "employee," it would be redundant to state "employee of an independent contractor," as done in the LCCE Exclusion, because the term "employee" would be sufficiently expansive to already cover such an individual.  Mesa correctly points out that the base Insurance Policy definition of "temporary worker" is replaced by a provision in the LCCE Exclusion itself, expanding the definition to include a person who is "A short-term worker" or "Not an 'employee' or 'volunteer' worker."  Dkt. No. 35-2 at 18.  Again, even considering the absence of any reference to the insured, the Court does not find it reasonable to interpret these subsections not to include a privity component.

Mesa's motion for reconsideration fails to identify "matters . . . that might reasonably be expected to alter the conclusion reached by the court.'" *Lewis v. Martinez*, 9:15-cv-55 (MAD/ATB), 2019 WL 2105562, *1 (N.D.N.Y. May 14, 2019) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (citations omitted)).  Accordingly, the Court rejects Plaintiff's arguments and denies the motion for reconsideration.

## IV.    PRE-JUDGMENT INTEREST

The parties have submitted additional briefing on Plaintiff's request for pre-judgment interest in excess of the policy limits.  Dkt. Nos. 44, 45.  Both parties agree that Mesa's obligation to pay pre-judgment interest on the state court judgment is governed by the terms of the Insurance

---

[4]The LCCE Exclusion identifies "leased employee" as a defined term by application of the quotation marks around it.  Dkt. No. 35-2 at 18.  However, the term "leased employee" is not a term defined by the Insurance Policy. *See id.* at 36-39.  "Leased worker" is specifically defined to include a relationship with the Insured, defining the term in relevant part as "a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business." *Id.* at 37.  Mesa apparently agrees that these two terms should be considered one and the same.  Dkt. No. 42-1 at 11.

Policy.  Dkt. Nos. 44 at 5-13; 45 at 1-3.  Specifically, the Insurance Policy contains the following

relevant provision:

> SUPPLEMENTARY PAYMENTS – COVERAGES A AND B
>
> 1. We will pay, with respect to any claim we investigate or settle, or any 'suit' against an insured we defend:
>
> a. All expenses we incur.
>
> b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies.  We do not have to furnish these bonds.
>
> c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance.  We do not have to furnish these bonds.
>
> d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.
>
> e. All costs taxed against the insured in the "suit".
>
> f. Prejudgment interest awarded against the insured on that part of the judgment we pay.  If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.
>
> g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.
>
> These payments will not reduce the limits of insurance.

Dkt. No. 35-2 at 31-32 (The Supplementary Payments provision).  The parties agree that, per the

Supplementary Payments provision, pre-judgment interest on "on that part of the judgment" Mesa

pays is covered above the Insurance Policy's applicable $1,000,000 limit, provided the stated

conditions precedent are satisfied.

It is here that the parties' contentions diverge.  According to Plaintiff, Mesa's disclaimer

of coverage in December 2014 demonstrates that Mesa "hired counsel who reviewed the complaint

in the Underlying Action, reviewed the Insurance Policy, and analyzed the allegations contained in such compliant, how those allegations related to the terms of the Insurance policy, and reached the erroneous conclusion that there was no coverage under the Insurance Policy." Dkt. No. 44 at 10. Plaintiff contends that this conduct constituted investigation of a claim sufficient to trigger the Supplementary Payments provision of the Insurance Policy, and thus Mesa owes pre-judgment interest on the state court judgment. *Id.*

Mesa, however, contends that an implied distinction must be read into the Supplementary Payments provision of the Insurance Policy. Dkt. No, 45 at 2-3. Specifically, that the reference to both "claims" and "suits" in the preamble "reflects the fact that some of the referenced costs may (or may not) arise before or independently of any suit being filed against the insured." *Id.* Thus, according to Mesa, because subparagraphs e through f[5] "necessarily arise only in the context of suits," they can only be triggered if Mesa defended its insured in that suit. *Id.* Because Mesa disclaimed coverage and did not defend its insured in the underlying state court action, it contends that the only applicable condition precedent in the Supplementary Payments provision is not satisfied, and Mesa is therefore not liable for pre-judgment interest. *Id.*

There is nothing in the Supplementary Payments provision of the Insurance Policy to suggest, much less unambiguously establish, that it should be read in the manner proposed by Mesa. A plain reading of the provision conveys two distinct conditions precedent triggering the additional liabilities contained in subsections a through g. There is nothing to suggest that only one of these conditions precedent is actually applicable to subsection f, and the Court declines to limit its interpretation to that effect. Mesa cites to *MCI LLC v. Rutgers Cas. Ins. Co.*, No. 06 Civ.

---

[5] Mesa does not address what effect subsection g., regarding post-judgment interest, has on its interpretation of the Supplementary Payments provision.

4412, 2007 WL 4258190, at *6 (S.D.N.Y. Dec. 4, 2007) as support for its position, but this case, if anything, undermines Mesa's arguments.  Similar to this action, the defendant-insurance company in *MCI LLC* became liable for a default judgment predicated on an underlying claim it disclaimed coverage for, and for which it never defended its insured.  *Id.* at *1-2. The parties disagreed about the application of a specific provision in the insurance policy which authorized pre-judgment interest in certain situations – that provision is, for all relevant purposes, identical to the Supplementary Payments provision in this action.  *Id.* at 3.  As in this case, because the defendant-insurance company in *MCI LLC* never defended its insured in a suit, the only applicable condition precedent was "with respect to any claim we investigate or settle."  However, neither party in *MCI LLC* argued that pre-judgment interest was not warranted on this basis.  In fact, the main contention among the parties was whether defendant had actually investigated the claim, and whether its failure to do so constituted a breach of the covenant of good faith and fair dealing.  *Id.* at 6-11.  There is nothing to suggest that Plaintiff would not have been entitled to pre-judgment interest, had the court determined that defendant investigated the claim. Here, Mesa does not dispute that it investigated the underlying claim.  Accordingly, the Court finds that Plaintiff is entitled to pre-judgment interest on the part of the judgment Mesa owes under the Insurance Policy, i.e. $1,000,000.00, pursuant to the Supplementary Payments provision.

Plaintiff appears to contend that he is entitled to additional pre-judgment interest with respect to a judgment against Mesa in this § 3420 action. Dkt. No. 44 at 13-16.  The Court disagrees.  CPLR § 5001(a) provides for pre-judgment interest on breach of contract causes of action.  Interest is "'simply the cost of having the use of another person's money for a specified period.'" *Mahoney v. Brockbank,* 142 A.D.3d 200, 202 (2d Dep't 2016) (quoting *Love v. New York*, 78 N.Y.2d 540, 544 (1991)). "Importantly, '[s]tatutory interest is not intended to operate as

11

a punishment upon the payer' or provide a windfall to the payee." *Emerson Elec. Co. v. Asset Mgmt. Assocs. of New York, Inc.*, No. 16-cv-1390, 2023 WL 4850528, at *14 (E.D.N.Y. July 28, 2023) (quoting N.Y. C.P.L.R. § 5001:1 (McKinney 2023)); *see also Verizon N.Y., Inc. v. Supervisor of Hempstead*, 189 A.D.3d 1658 (2d Dep't 2020) ("[I]nterest is not a punishment arbitrarily levied upon a culpable party. Instead, an award of interest is simply a means of indemnifying an aggrieved person. It represents the cost of having the use of another person's money for a specified period." (quoting *Mohassel v. Fenwick*, 5 N.Y.3d 44 (2005))).

To this end, courts are "not bound to award pre-judgment interest under CPLR § 5001, where such an award would 'amount to double recovery.'" *Nature's Plus Nordic A/S v. Nat. Organics, Inc.*, 108 F. Supp. 3d 52, 56 (E.D.N.Y. 2015) (quoting *Bulk Oil (U.S.A.), Inc. v. Sun Oil Trading Co.*, 697 F.2d 481, 485 (2d Cir. 1983)), *aff'd*, 646 F. App'x 25 (2d Cir. 2016); *see also Greenway Mews Realty, L.L.C. v. Liberty Ins. Underwriters, Inc.*, 214 A.D.3d 411, 412 (1st Dep't 2023) (confirming the lower court's denial of pre-judgment interest on an unpaid judgment because "[a]warding such interest would result in a double recovery, given that [plaintiffs] were already entitled to post[-]judgment interest on the judgment"). Instead, "New York courts . . . have looked to the economic realities of a given case to avoid conferring windfalls in the form of prejudgment interest." *GE Funding Cap. Mkt. Servs., Inc. v. Nebraska Inv. Fin. Auth.*, 767 F. App'x 110, 115 (2d Cir. 2019); *see also E.J. Brooks Co. v. Cambridge Security Seals,* 858 F.3d 744, 751 (2d Cir. 2017) (collecting New York cases recognizing that "[n]otwithstanding the mandatory language of [§ 5001(a)], some New York courts appear to have forged an exception to mandatory prejudgment interest to prevent windfalls in favor of plaintiffs.").

Here, awarding the second category of pre-judgment interest requested by Plaintiff would result in a double recovery, given that Plaintiff is already entitled to post-judgment interest on the

12

state court judgment. Mesa's obligation to satisfy the state court judgment "was a single monetary obligation, and its failure to pay the judgment did not result in 'separate' or 'distinct' injuries that justify an award of additional interest." *Greenway Mews Realty, L.L.C.*, 214 A.D.3d at 412. Otherwise, the post-judgment interest Plaintiff is already earning properly compensates Plaintiff for any lost use of the funds. Accordingly, Plaintiff's request for pre-judgment interest to this extent is denied.

Based on the aforementioned, Plaintiff shall submit a proposed judgment consistent with the aforementioned, with an affidavit explaining his calculations, by April 10, 2026. Mesa shall file any objections, to the extent they have not already been addressed by this Court, by April 20, 2026.

## V.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Mesa's motion for reconsideration, Dkt. No. 42, is **DENIED**, and it is further

**ORDERED** that Plaintiff's request for an award of pre-judgment interest is **GRANTED in part.** Plaintiff shall submit a proposed judgment consistent with this Memorandum-Decision and Order, with an affidavit explaining his calculations, by April 10, 2026. Mesa shall file any objections, to the extent they have not already been addressed by this Court, by April 20, 2026.

**IT IS SO ORDERED.**

Dated: March 24, 2026

_____
Elizabeth C. Coombe
U.S. District Judge